STATE of Wisconsin, Plaintiff-Respondent,

v.

Kurt J. DOERR, Defendant-Appellant.

Court of Appeals

*No. 98–1047. Submitted on briefs June 15, 1999.—Decided July 28, 1999.*

(Also reported in 599 N.W.2d 897.)

616

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Miller Carroll* of *John Miller Carroll, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jennifer E. Nashold*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J.  Kurt J. Doerr appeals from judgments of conviction for two counts of battery to a police officer contrary to § 940.20(2), STATS., and one count of resisting an officer contrary to § 946.41, STATS. He argues that the trial court erred by admitting evidence of his preliminary breath test (PBT) without any corresponding expert testimony, and the court similarly erred by allowing evidence of his refusal to take a chemical test for intoxication to be admitted. Doerr also argues that the admissibility of the PBT is barred by § 343.303, STATS. Although we determine that the trial court erred by admitting evidence of the PBT, we affirm because the error was harmless.

## BACKGROUND

Upon observing "erratic driving behavior," Deputy Eric Dallmann pulled over Doerr's automobile for an investigatory stop. Dallmann noticed that Doerr's speech was thick and slurred, his eyes were bloodshot and glassy, and he smelled of alcohol. Dallmann asked for Doerr's driver's license and informed Doerr that he was returning to his squad car to check Doerr's history and that Doerr should remain in his car until he returned. While Dallmann was radioing in Doerr's information, Doerr exited his car. The officer yelled at Doerr to return to his car, but Doerr continued to approach the squad car. Again, Dallmann yelled at Doerr to get back in his car. When Doerr ignored his

619

commands, Dallmann, following his officer training, slammed his car door, put his car in reverse and floored it.

After creating a safe distance between Doerr and himself, Dallmann observed Doerr return to his car. Dallmann radioed the police station requesting backup. Four officers responded and arrived on the scene.

Dallmann removed Doerr from his vehicle and had him perform field sobriety tests. The officers administered a PBT to measure Doerr's blood alcohol level. The test showed a blood alcohol level of 0.21%. Doerr was arrested for operating a motor vehicle while intoxicated. He was handcuffed and informed that his person would be searched. Dallmann searched Doerr's upper body first and then went to his left foot area. Doerr was wearing cowboy boots, so Dallmann needed to lift Doerr's pant leg to reach his fingers inside the boot. Doerr behaved argumentatively throughout the search. When Dallmann reached the right foot area, he again lifted Doerr's pant leg. As Dallmann was lifting up the pant leg, Doerr drew his leg away and kicked Dallmann in the shin. While Dallmann secured Doerr's right leg, Deputy Charles Richmond placed Doerr over the front end of the squad car. Another officer completed the body search and asked Doerr to stand up. Doerr then kicked his leg backwards, hitting the officer in the shin. As the officers placed Doerr in the squad car, he resisted and tried to break away.

In addition to driving while under the influence, Doerr was charged with two counts of battery to a law enforcement officer and one count of resisting an officer. *See* §§ 940.20(2), 946.41, STATS. He was also charged with refusing to take a chemical test, which is

the subject of a separate civil proceeding. He pled not guilty to all counts, and a jury trial was held.

Doerr brought two motions in limine. First, he sought to exclude the results of the PBT from being used at trial. Second, he argued for the exclusion of any reference to his refusal to take a chemical test. Both motions were denied. The jury found Doerr guilty on all three counts. Doerr appeals.

## DISCUSSION

Doerr argues that the trial court committed reversible error in denying his motions in limine. The first ruling allowed Dallmann to testify about Doerr's PBT results, despite Doerr's contention that evidentiary use of PBT results requires expert testimony to lay the proper foundation and explain the mechanism to the jury. The second ruling allowed the State to make references during the trial to Doerr's refusal to take a chemical test.

In reviewing a trial court's evidentiary rulings, we do not consider whether we initially would have admitted the evidence; rather, we determine whether the court exercised its discretion according to accepted legal standards and the facts of record. *See State v. Alsteen,* 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). Because the admission or exclusion of evidence is a discretionary trial court decision, its ruling will not be overturned on appeal absent an erroneous exercise of that discretion. *See State v. Lindh,* 161 Wis. 2d 324, 348–49, 468 N.W.2d 168, 176 (1991), *rev'd on other grounds,* 521 U.S. 320 (1997).

## A. PBT Results Evidence

In his first motion in limine, Doerr sought to exclude evidence of the PBT. Doerr presented three arguments against the evidence's admission. First, he argued that § 343.303, STATS., states that the test is unreliable in "any action or proceeding" except for challenges to probable cause to arrest or the necessity of the chemical test. Second, Doerr contended that the State would not be able to lay the proper foundation for this evidence without using an expert witness, which the State was not prepared to present. Third, he disputed the relevancy of the PBT results because he was not disputing the fact that he was intoxicated at that proceeding, the jury would hear evidence of intoxication from other State witnesses, and the information did not address any of the elements of the charges of the trial—battery to and resisting a police officer.

In denying his motion, the trial court relied on *State v. Beaver*, 181 Wis. 2d 959, 970, 512 N.W.2d 254, 258 (Ct. App. 1994), to conclude that the § 343.303, STATS., bar on the evidentiary use of PBT results is limited to motor vehicle violations. Thus, Doerr's PBT results could be used as evidence because his charges were for battery to and resisting a police officer, not motor vehicle violations. We agree.[1]

---

[1] Doerr posits that the determination in *State v. Beaver*, 181 Wis. 2d 959, 970, 512 N.W.2d 254, 258 (Ct. App. 1994), that § 343.303, STATS., only bars evidentiary use of the PBT results in proceedings for motor vehicle violations is dicta language, not the decision's holding. We disagree because that determination was germane to the controversy in *Beaver*. "[W]hen an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *Malone v. Fons*, 217 Wis. 2d 746, 754, 580

Responding to Doerr's trial court argument that it would not be able to lay the proper foundation for the PBT results, the State contended that it planned to have Dallmann make an offer of proof and explain to the jury the device used to take the test. The trial court agreed. Doerr also objected to the relevancy of this evidence. He argued that the PBT results should not be allowed as evidence because he was not objecting to whether there was probable cause to arrest for the driving while under the influence charge. The court disagreed:

> [Y]ou are suggesting that there isn't an issue as to his intoxication, and therefore, I don't understand to some extent the argument that's being made because you are agreeing that he was intoxicated here, which is really what the PBT suggests. It's not conclusive obviously, but I am satisfied this officer is in a position to testify based on his qualifications. The jury can hear his qualifications, and the jury as the trier of fact can decide whether or not it should be given weight as relates to the charges for which we are here for, which is battery to a peace officer and resisting an officer. So I will allow the testimony to be presented.

██ This court has long held that expert testimony should be adduced when interpreting the evidence involves special knowledge, skill or experience that is not within an ordinary person's realm of experience or knowledge. *See State v. Johnson*, 54 Wis. 2d 561, 564, 196 N.W.2d 717, 719 (1972). In such complex and technical situations, the trier of fact without the assistance

N.W.2d 697, 701 (Ct. App.), *review denied,* 219 Wis. 2d 922, 584 N.W.2d 123 (1998) (quoted source omitted).

of expert testimony would be speculating, and the lack of expert testimony in such cases constitutes an insufficiency of proof. *See id.* at 565, 196 N.W.2d at 719.

We determine that the PBT is a scientific device and that an ordinary person requires expert testimony to interpret evidence from this device. For example, the legislature has concluded that some breath test instruments after being evaluated and approved by the Department of Transportation (DOT) are entitled to a prima facie presumption of accuracy and can be admitted as evidence without foundation evidence assuring the instruments' accuracy and reliability. *See State v. Busch,* 217 Wis. 2d 429, 446, 576 N.W.2d 904, 911 (1998).

> A properly evaluated and approved instrument relieves prosecutors from presenting evidence of the instrument's scientific accuracy and reliability in each prosecution; they do not have to waste precious resources to affirmatively prove compliance with accepted scientific methods as a foundation for the admission of the test results.

*State v. Baldwin,* 212 Wis. 2d 245, 260, 569 N.W.2d 37, 43 (Ct. App. 1997), *rev'd on other grounds sub nom. State v. Busch,* 217 Wis. 2d 429, 576 N.W.2d 904 (1998). The PBT is not included in the DOT's list of approved instruments. Evidentiary use of PBT results is addressed in § 343.303, STATS. There, it is stated that rather than enjoying a presumption of validity and accuracy, the PBT has a limited evidentiary use in motor vehicle proceedings. *See* § 343.303; *Beaver,* 181 Wis. 2d at 970, 512 N.W.2d at 258.

The PBT device has not been approved by the DOT and does not receive a prima facie presumption of accu-

racy to establish a defendant's blood alcohol level. Therefore, prosecutors who wish to rely on the PBT results are required to present evidence of the device's scientific accuracy and reliability and prove compliance with accepted scientific methods as a foundation for the admission of the test results.

In this case, the State presented Dallmann to testify not only to Doerr's PBT results but also to provide the jury with background information about the device. Dallmann's testimony was insufficient to lay a proper scientific foundation for the jury. The following is an excerpt from Dallmann's explanation of how the PBT operates:

> It measures the amount of blood alcohol that you have in your blood system, but it measures it from your lungs. . . . [The] machine . . . will detect . . . how much alcohol was in the blood from [the] defendant's breath.

To lay a foundation for the jury about the PBT's scientific accuracy and reliability, a prosecutor must "affirmatively prove compliance with accepted scientific methods as a foundation for the admission of the test results." *Baldwin*, 212 Wis. 2d at 260, 569 N.W.2d at 43. We do not read Dallmann's testimony as establishing that the PBT's analysis of Doerr's breath was accurate and achieved through an accepted scientific method.

Furthermore, the State presented conflicting testimonies about the reliability of the PBT device. Dallmann testified that 99.9% of the time the PBT results were lower than a test given on the Intoxilyzer 5000. However, Richmond testified that "[g]enerally the PBT will have a higher reading than would an Intoxilyzer test." Obviously, these conflicting testimo-

nies did not adequately inform the jury about the scientific reliability of the PBT device.

We conclude that it was error for the trial court to allow the evidentiary use of Doerr's PBT results without a proper foundation for the jury to interpret this evidence. Dallmann's testimony was insufficient to inform the jury about the device's scientific accuracy, reliability and compatibility with accepted scientific methods.

We will now address the State's contention that this error was harmless. An evidentiary error is subject to a harmless error analysis and requires reversal or a new trial only if the improper admission of evidence has affected the substantial rights of the party seeking relief. *See State v. Dyess*, 124 Wis. 2d 525, 547, 370 N.W.2d 222, 233–34 (1985). Under this test, we will reverse only where there is a reasonable possibility that the error contributed to the guilty verdict. *See id.* at 547, 370 N.W.2d at 233. In making this determination, we weigh the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict. *See State v. Britt*, 203 Wis. 2d 25, 41, 553 N.W.2d 528, 534 (Ct. App. 1996).

Considering the totality of the record, it is apparent that the evidentiary error did not contribute to the guilty verdict. Even though Doerr's PBT results could have led the jury to believe that he was intoxicated, the issue of whether Doerr was intoxicated is not a crucial or controlling feature of the crimes of battery to and resisting a police officer. Furthermore, evidence of Doerr's intoxication was presented to the jury by a number of witnesses. Doerr himself testified to having

consumed "Korbel on the rocks" and "eight to ten 7 or 8-ounce beers" that evening. A review of the record demonstrates that the error did not reasonably contribute to Doerr's conviction.

## B.  Refusal Evidence

In his second motion in limine, Doerr sought to exclude any reference to his refusal to take a chemical test. The court denied the motion and admitted the evidence because it was relevant to demonstrate Doerr's attitude and conduct toward the police.

Doerr contends that the admission of this evidence was error. He objects to this evidence because it is not relevant and has no relation to the charged crimes. He argues that the refusal occurred later at the police station, not at the arrest scene. Because the evidence does not make it more or less probable that he committed the crimes, he contends it had little probative value and created unfair prejudice against him. We disagree.

During the trial, Dallmann presented the following testimony about Doerr's refusal to submit to a chemical test.

Q. Did you in fact ask [Doerr] to submit to a test with the Intoxilyzer 5000?
A. Yes, I did.
Q. What was his response to that?
A. There were many responses.
Q. Did he ever agree to take it?
A. No, no.
Q. Did he ever use any profanities with you?
A. Yes, he did. . . . Fuck you, I ain't doing shit until I see an attorney, I'm not answering any of your f-ing questions. I tried to persuade him that it would be in his best interest to blow in the machine

627

instead of me putting this down for a refusal, and I just kept getting fuck you constantly.

The prosecutor also referred to the refusal during closing argument. The prosecutor's closing argument surmised that Doerr's conduct when refusing to submit to the chemical test demonstrated his attitude and personality. The prosecutor did not ask the jury to infer from Doerr's refusal that he was conscious of being intoxicated.

■

Despite the fact that refusal evidence may be used to demonstrate that a defendant was aware that he or she was intoxicated, *see State v. Albright*, 98 Wis. 2d 663, 668, 298 N.W.2d 196, 200 (Ct. App. 1980), we determine that it was not used in such a manner in this case. For instance, the jury was not instructed or asked to infer that Doerr's refusal displayed that he was conscious of being intoxicated. Nor can we read Dallmann's testimony as suggesting that Doerr refused because he was conscious of such guilt. Here, the refusal was used to demonstrate Doerr's conduct toward police and is directly linked to the criminal events charged against Doerr. The evidence involved Doerr's interaction with the other principal actors, the police officers, followed directly on the heels of Doerr's battery and resisting arrests, and, most importantly, makes the resisting allegations more probable. *See United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir. 1984) (holding that evidence of the defendant's gang lifestyle "was not admitted to prove bad character; rather, it was intricately related to the facts of [the]

case"). We conclude that the evidence was relevant and not unduly prejudicial.[2]

*By the Court.*—Judgments affirmed.

---

[2] Doerr also argues that the trial court erred by allowing the refusal evidence when Doerr had not yet had his civil refusal hearing. We need not address this argument because we conclude that the refusal evidence was only used to show Doerr's attitude toward the police officers and not his consciousness of guilt.