State of Wisconsin, Plaintiff-Respondent,
v.
Kevin E. Daugherty, Defendant-Appellant.
No. 2005AP2700-CR.
Court of Appeals of Wisconsin, District II.
May 24, 2006.
NETTESHEIM, J.[1]
¶1 Kevin Daugherty appeals from a judgment convicting him, after trial to a jury, of operating a motor vehicle while intoxicated (OWI), second offense. On appeal, Daugherty challenges the trial court's denial of his pretrial motion to suppress evidence. Daughtery contends that the arresting officer's initial contact with him constituted an unlawful seizure and that the officer illegally continued the investigation without reasonable suspicion, lacked the necessary probable cause to administer a preliminary breath screening test (PBT), and lacked the necessary probable cause to arrest. Daughtery also contends that the trial court erroneously admitted the PBT evidence at the suppression hearing because it lacked adequate foundation.
¶2 We conclude that the arresting officer's initial investigation was a reasonable exercise of the officer's community caretaker function, that each subsequent investigative step was properly supported, and that the PBT evidence was properly admitted. We affirm the judgment.

BACKGROUND
¶3 The relevant facts as established at the suppression hearing are undisputed. On July 16, 2004, at approximately 8:30 p.m., City of New Berlin Police Officer Ryan Puente was on routine bicycle patrol in a city park-and-ride lot. Puente came upon a parked car with a man, later identified as Daugherty, in the driver's seat. Daugherty "was kind of slunched back," his head off to one side, his eyes closed, and one hand "kind of in a locked-up position on his torso." Puente found this "odd" because Daugherty appeared "totally unresponsive in an awkward position," there was a lot of activity in the park-and-ride, and it was still light outside. Concerned that Daugherty might be having a seizure or stroke, Puente circled the vehicle twice, and then called dispatch. A check of the license plates revealed that the vehicle was registered to Daugherty with an address in Big Bend, a community about ten minutes away.
¶4 Puente tapped on the driver's side window, identified himself as a police officer, and asked Daugherty if he was all right. Daugherty opened his door and said he was "just fine" and was "getting some rest before going home." Puente smelled a strong odor of intoxicants on Daugherty's breath. Daugherty denied that he had been drinking and said he was on his way home from work. He also stated he had traveled to the park-and-ride via I-94, then corrected himself and said I-43. The park-and-ride is just off I-43. He also said he had been at the park-and-ride for about forty minutes.
¶5 Based on the odor of alcohol on Daugherty's breath and his decision to take a nap just a short distance from home while it was still light out, Puente decided to investigate further. He first asked Daugherty to recite the alphabet. Although Puente observed no problems with Daugherty's speech, Daugherty failed three times to complete the alphabet, reciting only about the first half. At this point Puente asked Daugherty for his driver's license, which he had some difficulty locating. Puente then asked Daugherty to exit the vehicle in order to perform a series of field sobriety tests: the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, the one-leg-stand and the months-of-the-year test. On the HGN test, Daugherty exhibited a lack of smooth pursuit and distinct nystagmus in both eyes and Puente observed that Daugherty's eyes were glossy. Although Puente observed no balance problems as Daugherty exited his vehicle, Daugherty appeared somewhat unsteady during the walk-and-turn test and exhibited one of eight clues by failing to walk heel to toe on some steps. At the end of the test, Daugherty turned around, lost his balance, and almost fell to the ground. However, Daugherty correctly performed the one-leg-stand and months-of-the-year tests. Puente acknowledged that Daugherty's vehicle was parked correctly and that he did not observe Daugherty drive or see him commit any traffic violations.
¶6 After making these observations, Puente administered a PBT, which produced a .22 percent blood alcohol result. Based on the PBT and the totality of the circumstances, Puente arrested Daugherty for OWI.
¶7 Daugherty moved to suppress all evidence obtained by Puente on grounds that he was unlawfully seized, detained without reasonable suspicion, searched without a warrant, and arrested without probable cause.[2] The trial court denied the motion, ruling that Puente's initial contact with Daugherty was a reasonable exercise of the officer's community caretaker function. The court also ruled that Puente reasonably continued the investigation thereafter, had probable cause to ask Daugherty to submit to the PBT, used a PBT device approved by the department, and had probable cause to ultimately arrest Daugherty. A jury subsequently found Daugherty guilty of OWI and operating with a prohibited alcohol content, contrary to WIS. STAT. § 346.63(1)(a) and (b). The subsequent judgment recited a conviction for OWI, second offense. Daugherty appeals.

DISCUSSION
¶8 Review of an order denying a motion to suppress evidence presents a question of constitutional fact. State v. Hughes, 2000 WI 24, ¶15, 233 Wis. 2d 280, 607 N.W.2d 621. We uphold a circuit court's findings of fact unless they are clearly erroneous and then independently apply the law to those facts. Id. However, since the underlying facts in this case are undisputed, only questions of law remain such that we are not bound by the circuit court's legal conclusions. See State v. Olson, 2001 WI App 284, ¶6, 249 Wis. 2d 391, 639 N.W.2d 207.

1. Justification for the Initial Contact
¶9 Daugherty first argues that Puente's actions were an unjustified seizure under the Fourth Amendment. Before the trial court, the State argued that no seizure occurred. Alternatively, the State contended that if a seizure occurred, Puente's actions were justified under the community caretaker function. On appeal, the State concedes the seizure and limits itself to the community caretaker argument. We therefore will assume, without deciding, that a seizure occurred and move directly to the question of whether Puente's actions were justified as a community caretaker activity.
¶10 A community caretaker justification for a seizure exists when the police conduct at issue was "bona fide community caretaker activity" and "the public need and interest outweigh the intrusion upon the privacy of the individual." State v. Anderson, 142 Wis. 2d 162, 169, 417 N.W.2d 411 (Ct. App. 1987), rev'd on other grounds, 155 Wis. 2d 77, 454 N.W.2d 763 (1990). Bona fide community caretaker activity is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Dull, 211 Wis. 2d 652, 658, 565 N.W.2d 575 (Ct. App. 1997) (citation omitted). One of the key questions in a community caretaker analysis is whether the police officer had the right to be at the location such that the officer was entitled to make the observations at issue and to take the responsive action. Anderson, 142 Wis. 2d at 167. We independently review the circuit court's determinations about the nature and reasonableness of the challenged conduct. Dull, 211 Wis. 2d at 658.
¶11 Daugherty contends that Puente's conduct was not bona fide community caretaker activity because Puente circled Daugherty's vehicle twice and radioed dispatch before making contact with him. Daugherty contends that this was investigative conduct of possible criminal activity, thereby taking the situation out of the realm of the community caretaker function. We disagree. Puente testified that he was on routine patrol when he found Daugherty in an "awkward position," that it was "odd" to find someone asleep in a vehicle at this time of day, and that he was concerned Daugherty might be suffering a medical emergency. We agree with the trial court that, at this point, Puente's actions were wholly separate from the detection, investigation, or acquisition of evidence relating to a crime. Rather, the purpose of the contact was solely to ascertain whether Daugherty was okay and to render aid if needed. That Puente circled the vehicle twice demonstrates to us a measure of caution. Had Daugherty awakened during this time, Puente may well have continued on his way without Puente's involvement. It was Daugherty's lack of responsiveness while in an awkward position in daylight amid outside activity that prompted Puente to inquire further into the situation. Radioing dispatch gave Puente identifying information about the driver that would have been useful had a medical emergency materialized. Under these facts, both of Puente's actions were benign.
¶12 Daugherty nonetheless contends that the public interest did not outweigh the intrusion into his privacy. Whether the public need and interest outweighs a privacy intrusion depends on (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved;[3] and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished. Anderson, 142 Wis. 2d at 169-70. Daugherty argues that the vehicle was properly parked and not disabled, that the stop occurred during daylight at a park-and-ride, not on the road, and that Puente could have monitored his vehicle instead of making contact.
¶13 Daugherty's arguments are unpersuasive. The public has a clear interest in allowing police officers to make contact with people who may need medical assistance. Puente employed no display of force. Instead, he merely tapped on the window of the vehicle and identified himself. Moreover, there were no alternative means of expediently determining whether Daugherty had a medical emergency. Monitoring a vehicle from afar over a period of time would be cold comfort to someone requiring prompt attention. We conclude Puente's initial contact fell within a proper exercise of the community caretaker function, and the trial court correctly so ruled.

2. Reasonable Suspicion to Investigate
¶14 To investigate a potential violation of the law, an officer must have a reasonable suspicion, based on specific, articulable facts and reasonable inferences from those facts, that an individual is violating or has violated the law. State v. Colstad, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394. Daugherty argues that Puente lacked such facts, emphasizing that Puente observed no traffic violations or deviant driving, no problems with the way the vehicle was parked and, prior to the HGN test, no problems with Daugherty's speech or eyes.
¶15 However, the facts Daugherty singles out do not completely describe the circumstances. The trial court also found these: Puente came upon a car parked in a public lot and could not determine whether the person inside was asleep or unconscious; Daugherty admitted that he had been driving; Puente immediately smelled a "very strong odor of intoxicants" when Daugherty spoke; and Daugherty was initially confused about the highway that he had traveled to get to the park-and-ride. Taken together, we conclude Puente had reasonable suspicion to further investigate whether Daugherty had violated the law, and the trial court correctly so ruled.

3. Probable Cause to Administer PBT
¶16 Next, Daugherty argues that Puente lacked probable cause to request the PBT because he passed the walk-and-turn, one-leg-stand and months-of-the-year tests and Puente observed no slurred speech during these tests and no balance problems when Daugherty exited his vehicle or walked to the tests.
¶17 WISCONSIN STAT. § 343.303 provides in relevant part:
If a law enforcement officer has probable cause to believe that the person is violating or has violated s. 346.63(1) ... or s. 346.63(2) ... the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose.
The probable cause that justifies a preliminary breath test is less than the probable cause required for an arrest. Colstad, 260 Wis. 2d 406, ¶23. "Whether undisputed facts constitute probable cause is a question of law that we review without deference to the trial court." State v. Babbitt, 188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994).
¶18 Despite the facts Daugherty highlights, we conclude that Puente had probable cause to administer a PBT. Daugherty's breath smelled strongly of alcohol. He took a nap when only ten or fifteen minutes from home. He was confused about the highway he took to arrive at the park-and-ride, and had difficulty locating his driver's license. He also failed aspects of some of the field tests, and some in their entirety, including reciting the alphabet on three attempts. On the walk-and-turn test, he appeared unsteady, and almost fell after completing it. We reject Daugherty's arguments on this issue as well.

4. Admission of PBT Results
¶19 The fourth issue is whether the court erred when it admitted the results of Daugherty's PBT at the motion hearing.[4] Puente testified that he used an approved PBT device. However, on cross-examination, Puente testified that he could not identify the type of device used, what other devices have been approved, or, with certainty, where the particular device came from. Based on these concessions, Daugherty argues that the State failed to establish the necessary foundation for the admission of the PBT results.
¶20 In reviewing a trial court's evidentiary rulings, we consider whether the court exercised its discretion according to accepted legal standards and the facts of record, not whether we would have admitted the evidence. State v. Doerr, 229 Wis. 2d 616, 621, 599 N.W.2d 897 (Ct. App. 1999). We give great deference to such decisions, and will not find an erroneous exercise of discretion if there is a rational basis for the circuit court's decision. See Martindale v. Ripp, 2001 WI 113, ¶29, 246 Wis. 2d 67, 629 N.W.2d 698.
¶21 WISCONSIN STAT. § 343.303 authorizes an officer to administer a PBT "using a device approved by the department for this purpose." See WIS. STAT. § 340.01(12) (providing that "department" means the Department of Transportation). We acknowledge the Doerr holding that results from an unapproved device are inadmissible unless the prosecution presents "evidence of the device's scientific accuracy and reliability and ... compliance with accepted scientific methods as a foundation for the admission of the test results." Doerr, 229 Wis. 2d at 625. Doerr, however, was not a prosecution for a motor vehicle violation. Colstad establishes that expert testimony is not required in cases involving motor vehicle violations. Colstad, 260 Wis. 2d 406, ¶29.
¶22 Here, the State questioned Puente about the PBT results before laying the statutory foundation that the device was approved. The trial court sustained Daugherty's objections to those questions. This exchange between the assistant district attorney and Puente followed, with no intervening objection:
Q Sir, are you aware of whether or not the preliminary breath screening device that you used is approved byI think it's the Department of Transportation?
A Yes.
Q And is it?
A Yes.
Q Okay. And what was the reported value of that test?
A The .22.
¶23 The trial court found that Puente testified that the device he used on Daugherty had the approval of the Department of Transportation. While Puente did not testify further on the accuracy or reliability of the PBT device, the statute and Colstad do not mandate such evidence in a motor vehicle prosecution. Nor does Daugherty provide any other authority for the proposition that the State is obligated to provide such evidence before PBT results may be admitted at a suppression hearing in a prosecution for a motor vehicle violation. We uphold the trial court's decision to admit the PBT evidence at the suppression hearing.

5. Probable Cause to Arrest
¶24 Our holding that the PBT was properly admitted into evidence dooms Daugherty's final argument which contends that, without the PBT evidence, Puente lacked probable cause to arrest. However, we nonetheless choose to address the issue on the premise proffered by Daugherty.
¶25 "Probable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe ... that the defendant was operating a motor vehicle while under the influence of an intoxicant." State v. Nordness, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986).
¶26 Daugherty argues Puente lacked probable cause to arrest because he had not observed Daugherty committing any traffic violation and Daugherty had passed some of the field sobriety tests. However, Daugherty once again presents a selective recital of the relevant evidence. Puente observed Daugherty in his parked car in a park-and-ride just ten to fifteen minutes from his home. He was in an awkward position and appeared unresponsive. As soon as Daugherty started talking, Puente detected a strong odor of intoxicants. Daugherty was confused about the highway he had traveled to get to the park-and-ride, had difficulty locating his license and failed to complete the alphabet three times. He exhibited distinct nystagmus in both eyes, his eyes were glossy, he appeared unsteady on his feet and almost fell after completing the walk-and-turn test. Even without the PBT result, the totality of the circumstances provided a reasonable officer with sufficient grounds to believe that Daugherty operated a motor vehicle while under the influence of an intoxicant. Probable cause existed for the arrest, and the trial court correctly so ruled.

CONCLUSION
¶27 Puente's observations of Daughtery produced an ultimate picture that took shape as each new puzzle piece was added. Puente's initial contact with Daugherty was a proper and reasonable exercise of the community caretaker role of the police. Puente's sole aim at the outset was to ascertain Daugherty's welfare. The picture then changed from a citizen in possible distress to an individual reasonably suspected of OWI, justifying further investigation. Those new puzzle pieces led to a greater certainty of that suspicion such that probable cause existed to justify the administration of a PBT test, and following that, additional probable cause existed to justify the arrest. We uphold the trial court's denial of the motion to suppress, and we affirm the judgment of conviction.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2003-04). All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] A second motion, challenging whether Daugherty was adequately informed of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), was withdrawn at the suppression hearing.
[3] In some situations, a person has less of an expectation of privacy in an automobile. State v. Anderson, 142 Wis. 2d 162, 169 n.4, 417 N.W.2d 411 (Ct. App. 1987), rev'd on other grounds, 155 Wis. 2d 77, 454 N.W.2d 763 (1990).
[4] WISCONSIN STAT. § 343.303 states, in relevant part, "The result of the [PBT] shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged."