STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott R. BEAVER, Defendant-Appellant.†

Court of Appeals

*No. 93–1605–CR. Submitted on briefs December 28, 1993.—Decided January 26, 1994.*

(Also reported in 512 N.W.2d 254.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J.    Scott R. Beaver appeals from judgments of conviction for four counts of sexual assault pursuant to § 940.225(2)(a), STATS.[1] On appeal, Beaver contends that the trial court should have suppressed a statement he gave to the police following his arrest because his *Miranda*[2] waiver was not knowingly or intelligently given due to his intoxicated state. Alternatively, Beaver contends that even if his statement was properly admitted into evidence, the trial court erred by precluding evidence of the results of a preliminary breath test (PBT) administered to Beaver at the Walworth County jail following the statement. Beaver contends that the PBT result was relevant to the trustworthiness of his statement. We reject both arguments and affirm the judgments of conviction.

---

[1] Beaver was sentenced as a repeat offender pursuant to § 939.62(1)(b), STATS.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

We limit our recital of the facts to those germane to the appellate issues. Beaver spent much of the day and evening of November 3, 1991 drinking with a friend and the victim at the friend's farm. As the night wore on, Beaver became increasingly intoxicated and eventually spent the night at the farm because he was too drunk to drive.

According to the victim's testimony, Beaver sexually assaulted her the next morning. She called the police. Deputy Charles Hoekstra responded. He interviewed the victim and then arrested Beaver. Hoekstra read Beaver all of the required *Miranda* warnings. Hoekstra testified that Beaver "recited [the warnings] almost verbatim as I was reading them." Hoekstra smelled alcohol on Beaver and opined that Beaver could have been arrested for operating while intoxicated if he had been operating a vehicle. However, Hoekstra did not have any difficulty understanding Beaver.

Beaver was then taken to the police station where he was questioned by Detective Daniel Kelleher. The conversation was tape recorded. During this questioning, Beaver made incriminating statements regarding the sexual assault. Kelleher noticed that Beaver smelled of alcohol and, like Hoekstra, believed that Beaver was intoxicated. However, also like Hoekstra, Kelleher did not have any difficulty understanding Beaver.

Pursuant to a policy of the Walworth County jail, persons suspected of drinking are administered a PBT before admission to the jail. If the result is below .25 grams per 210 liters of breath, the person is admitted to the jail. If the reading is above .25, the person is first referred for medical clearance. Pursuant to this policy, Beaver was administered a PBT which produced a

result of .205. Accordingly, Beaver was admitted to the jail.

Pretrial, Beaver moved to suppress the tape recorded statement given to Kelleher. Beaver argued that he was too intoxicated to knowingly and intelligently waive his *Miranda* rights. The trial court denied the motion, ruling that Beaver's intoxication went to the trustworthiness of the statement, not its admissibility. During the trial, Beaver sought to introduce the PBT reading in an effort to convince the jury that his statement was not trustworthy. The trial court rejected the PBT evidence. Beaver appeals both rulings. We will discuss further relevant facts as we address each issue.

## ADMISSIBILITY OF BEAVER'S STATEMENT

Beaver argues that his waiver of the *Miranda* rights was not knowingly or intelligently made due to his intoxicated state. Thus, he argues that the trial court should have suppressed the statement.[3]

The State has the burden under *Miranda* to show that the defendant was advised of his or her constitutional rights, that he or she understood them, and that he or she intelligently waived them. *State v. Her-*

---

[3] We observe that this issue does not travel to the *Miranda* requirement of voluntariness which requires proof of police coercion. *See State v. Clappes*, 136 Wis. 2d 222, 241, 401 N.W.2d 759, 768 (1987). " '[P]olice coercion is a necessary prerequisite to a determination that a waiver was *involuntary* and not as bearing on the separate question whether the waiver was knowing and intelligent.' " *State v. Lee*, 175 Wis. 2d 348, 357, 499 N.W.2d 250, 254 (Ct. App. 1993) (quoting *United States v. Bradshaw*, 935 F.2d 295, 299 (D.C. Cir. 1991)) (emphasis in original). Beaver makes no claim that his statement was involuntary.

*nandez*, 61 Wis. 2d 253, 258, 212 N.W.2d 118, 120 (1973). The State's burden of proof is the preponderance of the evidence test. *State v. Lee*, 175 Wis. 2d 348, 362, 499 N.W.2d 250, 256 (Ct. App. 1993). Generally, the State establishes a prima facie case of a proper *Miranda* waiver where the defendant has been advised of all the rights and admonitions required by *Miranda* and the defendant indicates an understanding of such rights and is willing to make a statement. *Hernandez*, 61 Wis. 2d at 259, 212 N.W.2d at 121. In the absence of sufficient countervailing evidence, the statement should be admitted at trial against the defendant. *See id.*

■ We conclude that the State made out a prima facie case for admission of Beaver's statement. Beaver was properly advised of all the *Miranda* rights and admonitions. Beaver not only indicated an understanding of the rights, but repeated them nearly verbatim to Hoekstra. Although both Hoekstra and Kelleher considered Beaver intoxicated for purposes of the motor vehicle code, we are unaware of any law which holds that such a condition per se requires suppression of a statement if *Miranda* is otherwise satisfied. Rather, we look to the individual facts of the case to determine if sufficient countervailing evidence exists to rebut the State's prima facie case. *See id.*

Here, both police officers testified that Beaver understood his *Miranda* rights. Neither officer had any difficulty conversing with Beaver and neither observed Beaver to exhibit any difficulty in walking. Nothing in this record indicates that Beaver was disoriented or did not understand the thrust of Kelleher's questioning. Beaver's responses to the questions were relevant and appropriate to the topic under discussion.

Beaver argues that certain of his answers reflected his inability to give an intelligent and knowing waiver of his *Miranda* rights. First, he observes that certain portions of the tape following a question put to him are noted as "inaudible." Beaver contends that this demonstrates that he was unable to understand the particular question or to give a rational response. Second, he contends that his statement to Kelleher that he would only receive a short county jail sentence for rape demonstrates a similar lack of understanding. We disagree.

According to the testimony of Kelleher, the inaudible segments on the tape were oftentimes the result of he and Beaver talking at the same time. In addition, certain inaudible portions of the tape occur during remarks by Kelleher, not Beaver. This demonstrates that some of the inaudible portions stemmed from problems with the taping procedures, not the actors.

Nor are we satisfied that Beaver's remark about receiving a county jail sentence for rape required suppression of the statement. The critical inquiry in a suppression hearing under *Miranda* is whether the suspect was properly advised of the rights and admonitions, understood them, and properly waived them. If these requirements are satisfied (and here we conclude they were) a suspect's incorrect assessment of the possible penalty does not constitute sufficient countervailing evidence to undo the legal efficacy of the statement.[4]

---

[4] We also note that a county jail period of confinement as a condition of probation is a possible penalty in a sexual assault case.

We affirm the trial court's ruling refusing to suppress Beaver's custodial statement.

## ADMISSIBILITY OF THE PBT RESULT

Beaver argues that the trial court erred by refusing to allow evidence of the PBT result. The court relied on § 343.303, STATS., which generally bars the evidentiary use of PBT results. The State concedes that the court's ruling was misplaced under this statute. Nonetheless, the State argues that the ruling was correct under § 904.03, STATS., because the probative value of the evidence was substantially outweighed by considerations of unfair prejudice, juror confusion or time considerations.

We agree with the State that the PBT result was not barred by § 343.303, STATS. That statute provides that a PBT is not admissible in any action or proceeding subject to certain stated exceptions. While this language, viewed in isolation, is broad enough to support the trial court's ruling, we must bear in mind that the statute is part of the motor vehicle code governing the administration of the PBT and the results of such a test. The thrust of this statute is to give a police officer the authority to request a driver to submit to a PBT. The officer may then use the result of the PBT in making the ultimate determination whether to effectuate an arrest. In this context, the legislature provided that the PBT result is not admissible in any action or proceeding except those in which the arrest is challenged on probable cause grounds or those under the implied consent law.

A statute must be read in its proper context. *Continental Casualty v. Milwaukee Metro. Sewer. Dist.*, 175 Wis. 2d 527, 532, 499 N.W.2d 282, 284 (Ct. App. 1993).

Considering the entire subject matter of § 343.303, STATS., we conclude that the legislature intended the statutory bar against PBT evidence to apply only in proceedings relating to arrests for the offenses contemplated under that statute.[5]

Despite our disagreement with the basis for the trial court's ruling, we nonetheless conclude that the preclusion of the PBT evidence was proper. We may sustain a trial court's ruling on a legal theory which was not considered or articulated by the trial court. *State v. Holt*, 128 Wis. 2d 110, 125, 382 N.W.2d 679, 687 (Ct. App. 1985). Our conclusion is based on a number of grounds.

First, during the discussion concerning the admissibility of the PBT result, Beaver's counsel acknowledged that the PBT result was not an accurate reading. The evidentiary code should be applied in a manner which assures "that the truth may be ascertained." *See* § 901.02, STATS. Obviously, evidence which is inaccurate or unreliable does not serve this end. Beaver argues that we should not hold him to his counsel's statement because the remark was made in response to the trial court's erroneous invocation of § 343.303, STATS. We disagree. Regardless of the context in which counsel offered his statement, the fact remains that counsel represented the evidence to be inaccurate. Such evidence is inadmissible.

---

[5] These include: (1) the various species of operating a motor vehicle while intoxicated pursuant to § 346.63, STATS., or a local ordinance in conformity therewith; (2) injury by intoxicated use of a motor vehicle pursuant to § 940.25, STATS.; and (3) homicide by intoxicated use of a vehicle pursuant to § 940.09, STATS. *See* § 343.303, STATS.

Second, we fail to see how the PBT result would have contributed anything of significance to Beaver's attack on the trustworthiness of his statement. Beaver appears to assume that the prohibited alcohol concentration levels set out in the motor vehicle code, *see* § 340.01(46m), STATS., are somehow relevant to an intoxication-based challenge to the trustworthiness of a defendant's statement. We reject this assumption. We do not see the legislature's choice to impose certain alcohol concentration levels regarding the operation of motor vehicles as relevant per se to such a theory of defense.

Here, had the evidence been admitted, all the jury would have learned was that Beaver had a PBT result of .205. While this level represents in excess of twice the legal limit for motor vehicle operation in most instances, *see* § 340.01(46m), STATS., *it contributes nothing, standing alone, on the question of whether a defendant's statement given at that alcohol concentration level is trustworthy*. No statute or case law has decreed any presumptive level of intoxication which applies to the trustworthiness of a defendant's confession. Nor has the law done so with respect to the intoxication defense generally. *See* § 939.42, STATS.; *see also* WIS J I—CRIMINAL 755, 765.

Had Beaver proffered some admissible expert testimony in conjunction with the PBT result speaking to his ability to comprehend the *Miranda* rights or his ability to intelligently waive them, the evidentiary question presented here might be closer. However, Beaver simply proffered the PBT result and nothing more. Thus, if admitted, the evidence would have stood

in a legal and factual vacuum. Therefore, we reject Beaver's argument that the PBT result would have assisted the jury in assessing the trustworthiness of his statement.

Therefore, we doubt the relevance of the PBT evidence on a threshold basis. From this, we obviously agree with the State that any relevance of the evidence was outweighed by the other considerations set out in § 904.03, STATS.[6]

*By the Court.*—Judgments affirmed.

---

[6] Thus, we also reject Beaver's argument that the trial court's ruling violated his constitutional right to present evidence under *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Under *Chambers*, the evidence at issue must be "critical." *Id.* As our discussion reveals, the PBT result contributed little or nothing to Beaver's attack on the trustworthiness of his statement. The evidence was not critical to Beaver's defense.