STATE of Wisconsin,
Plaintiff-Respondent,

v.

Richard M. FISCHER,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2007AP1898–CR. Oral argument October 13, 2009.
—Decided February 2, 2010.*

2010 WI 6

(Also reported in 778 N.W.2d 629.)

For the defendant-appellant-petitioner there were briefs filed by *Robin Shellow, Urszula Tempska,* and *The Shellow Group,* Milwaukee, and *James M. Shellow*

and *Shellow & Shellow, S.C.*, Milwaukee, and oral argument by *James M. Shellow.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This is a review of a court of appeals decision[1] that affirmed a ruling by the Ozaukee County Circuit Court, the Honorable Tom R. Wolfgram presiding, that excluded an expert's report and opinion testimony based in part on the results of a preliminary breath test (PBT) the defendant took just prior to arrest. Given the PBT result, the later blood test result, and typical absorption rates, the expert's opinion was that the defendant, Richard M. Fischer (Fischer), had a blood alcohol concentration (BAC) below the legal limit at the time he was pulled over by police and that his BAC level only later rose above the limit as his body continued to absorb the alcohol.

¶ 2. In its motion in limine, the State sought to exclude the evidence to the extent that it relied on Fischer's PBT results on two grounds: first, that Wis. Stat. § 343.303, which prohibits admitting PBT results as evidence in drunk driving cases except for limited purposes that are inapplicable here,[2] means that PBT results cannot be used as the basis for an admissible

---

[1] *State v. Fischer,* 2008 WI App 152, 314 Wis. 2d 324, 761 N.W.2d 7.

[2] Wis. Stat. § 343.303 states in relevant part: "The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under s. 343.305(3)."

expert opinion in such a case; and second, that PBT results are not sufficiently reliable to serve as the basis for an expert opinion. Fischer argued that the motion in limine should be denied for two reasons: first, that Wis. Stat. § 907.03, which permits an expert to testify as to an opinion regardless of the admissibility of the underlying data on which the opinion is based, is an exception to Wis. Stat. § 343.303; and second, that any reading of those statutes that would require the exclusion of the expert's opinion would violate his constitutional right to present a defense. The circuit court and court of appeals ruled that the evidence must be excluded in general on the grounds advanced by the State: that Wis. Stat. § 343.303 prohibited the PBT results' use and that PBT results were insufficiently reliable to form the basis of an expert opinion that is admissible under Wis. Stat. §§ 907.02 and 907.03. Before this court, Fischer expanded his argument to urge the court to abandon the established Wisconsin "limited gatekeeper" approach, where reliability of evidence is a matter for the finder of fact, and instead adopt the federal standard articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*[3] where the trial judge has a significant role in determining reliability.

¶ 3. The questions before us are thus (1) whether Wis. Stat. § 343.303 creates an absolute bar on the admission of PBT results in operating while intoxicated (OWI) prosecutions, even when used as the basis for an expert's opinion offered under Wis. Stat. § 907.03; (2) if

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[3] *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 588 (1993) (holding that "under the [Federal Rules of Evidence] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable")

so, whether such an application of the statute violates a defendant's constitutional right to present a defense; and (3) whether we will accept counsel's invitation to revisit and reject the Wisconsin case law that establishes that "the reliability of the evidence is a weight and credibility issue for the fact finder."[4]

¶ 4. Though our analysis diverges in some respects from that of the circuit court and the court of appeals, we agree that the circuit court properly granted the State's motion in limine seeking to exclude the report and expert opinion testimony Fischer sought to introduce. Wisconsin Stat. § 343.303 expressly bars PBT results in OWI cases, and to allow Wis. Stat. § 907.03 to trump that prohibition would simply nullify that provision and would consequently present a variety of needless obstacles to the investigation, prosecution, and defense of drunk driving cases. Giving effect to the two statutes together under these circumstances admittedly presents difficulties, but it is no solution to transform Wis. Stat. § 343.303's inadmissibility into admissibility, reversing the legislature's clearly stated intention. Principles of statutory construction and our duty to respect clear legislative policy decisions require us to read Wis. Stat. § 343.303 to create an exception to § 907.03 and forbid us to read § 907.03 as nullifying the prohibition in § 343.303.[5]

---

[4] *State v. Peters,* 192 Wis. 2d 674, 690, 534 N.W.2d 867 (Ct. App. 1995).

[5] In this instance, we are not dealing with a legislative rule that "unduly burden[s] or substantially interfere[s] with" the exercise of the court's power, so we do not analyze the questions presented in terms of the shared power doctrine. *See Barland v. Eau Claire County,* 216 Wis. 2d 560, 573, 575 N.W.2d 691 (1998) ("In these areas of 'shared power,' one branch of government may exercise power conferred on another only to an extent that

¶ 5. Fischer argues that excluding the expert's opinion violates his right under the constitutions of the United States and Wisconsin to present a defense. We disagree. In *United States v. Scheffer,* the United States Supreme Court held that state rules that result in exclusion of defense evidence are constitutionally valid "so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' "[6] This court articulated and applied the *Scheffer* analysis in *State v. St. George,* 2002 WI 50, ¶ 52, 252 Wis. 2d 499, 643 N.W.2d 777. To evaluate Fischer's constitutional claim, we apply the two-part test set forth in *St. George,* 252 Wis. 2d 499, ¶¶ 54–55. We need not decide whether Fischer has satisfied the factors in the first step, i.e., that the testimony of the expert witness met the standards of Wis. Stat. § 907.02, that the opinion testimony in question is "clearly relevant to a material issue[,]" *id.,* ¶ 54, that it is necessary to Fischer's defense, and that its probative value outweighs the prejudicial effect. We assume for purposes of this analysis that Fischer has satisfied all four factors in the first part of the inquiry. We then reach the second step, which involves weighing the defendant's right against the State's interest in excluding the evidence. For

does not unduly burden or substantially interfere with the other branch's exercise of its power.") (quoting *In re Complaint Against Grady,* 118 Wis. 2d 762, 775, 348 N.W.2d 559 (1984)). There are cases in which we do not defer to legislative choices that affect the judicial branch; for a case voiding a statute that impermissibly "abrogated or modified by legislative action" the right of a court to direct a verdict, see *Thoe v. Chicago, Milwaukee & St. Paul Ry. Co.,* 181 Wis. 456, 464, 195 N.W. 407 (1923) (quoting *Kiley v. Chicago, Milwaukee & St. Paul Ry. Co.,* 138 Wis. 215, 226, 119 N.W. 309 (1909)).

[6] *United States v. Scheffer,* 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas,* 483 U.S. 44, 56 (1987)).

reasons explained herein, we hold that in an OWI prosecution, even if a defendant establishes a constitutional right to present an expert opinion that is based in part on PBT results, the right to do so is outweighed by the State's compelling interest to exclude that evidence. Permitting the use of that evidence as the basis for an expert opinion would render meaningless the legislature's act forbidding such evidence in OWI prosecutions, an act that promotes efficient investigations of suspected drunk driving incidents and furthers the State's compelling interest in public safety on its roads. The legislature's decision limiting the admissibility of PBT results helps law enforcement officers do their jobs with more cooperation from drivers than they would otherwise be likely to get—cooperation that is especially critical given that a PBT may be requested when an officer has a basis to justify an investigative stop but has not established probable cause to justify an arrest.[7]

---

[7] In *County of Jefferson v. Renz,* 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999), we addressed "the PBT's place in the process of an OWI investigation" in this way:

> First, an officer may make an investigative stop if the officer "reasonably suspects" that a person has committed or is about to commit a crime, Wis. Stat. [§] 968.24, or reasonably suspects that a person is violating the non-criminal traffic laws, *State v. Griffin,* 183 Wis. 2d 327, 333–34, 515 N.W.2d 535 (Ct. App. 1994). After stopping the car and contacting the driver, the officer's observations of the driver may cause the officer to suspect the driver of operating the vehicle while intoxicated. If his observations of the driver are not sufficient to establish probable cause for arrest for an OWI violation, the officer may request the driver to perform various field sobriety tests. The driver's performance on these tests may not produce enough evidence to establish probable cause for arrest. The legislature has authorized the use of the PBT to assist an officer in such circumstances.

(Footnote omitted.)

¶ 6. Accordingly, we affirm. Though we benefit from the analyses of the court of appeals and the circuit court, we reach the result via a different analysis than that of those courts. The circuit court's grant of the motion in limine excluding the report and expert opinion was proper under Wisconsin statutes and it did not violate Fischer's constitutional right to present a defense. The rule we adopt here is not a blanket rule against absorption curve opinion evidence but rather a rule prohibiting use of PBT results in the manner attempted here.[8]

¶ 7. Our analysis does not turn on an evaluation of the reliability of an expert opinion based on PBT results, which after all are routinely relied on to establish probable cause for arrest and have been held to be admissible for purposes other than those prohibited by statute.[9] Because we conclude that the State's countervailing compelling interest and not the reliability of the expert testimony is dispositive of the analysis, there is no reason for us to revisit Wisconsin's well-established role for the circuit court where expert testimony is

---

[8] We recognize the concerns expressed by the United States Supreme Court about blanket exclusions in *Rock v. Arkansas,* 483 U.S. 44, 56 (1987), and *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (discussing per se exclusions of evidence by state evidence rules).

[9] *See, e.g., State v. Doerr,* 229 Wis. 2d 616, 622, 599 N.W.2d 897 (Ct. App. 1999) (holding PBT result admissible where defendant was charged with battery to police officer and resisting officer); *State v. Beaver,* 181 Wis. 2d 959, 970 & n.5, 512 N.W.2d 254 (Ct. App. 1994) (ruling that Wis. Stat. § 343.303 did not bar admissibility of PBT result in trial for sexual assault, holding that the statutory bar on the evidentiary use of PBT results is limited to violations of Wis. Stat. §§ 346.63, 940.09, and 940.25, and affirming exclusion of the result on other grounds).

proffered. The law in Wisconsin continues to be that questions of the weight and reliability of relevant evidence are matters for the trier of fact. As we stated in *State v. Walstad,* "This is the relevancy test of our rules and we adhere to it."[10] We, therefore, decline to adopt a *Daubert*-like approach to expert testimony that would make the judge the gatekeeper.

## I. BACKGROUND

¶ 8. The following facts are undisputed: In January 2005, Fischer was pulled over when an officer observed lane deviation and suspected drunk driving. The stop occurred at approximately 1:40 a.m. Fischer performed poorly on field sobriety tests. After those tests, at a time unspecified in the police report, a PBT was administered, and it measured a breath alcohol content of .11 percent.[11] Fischer was arrested; a chemical blood test taken at 2:48 a.m. showed a BAC of .147 percent. He was charged with operating while intoxicated, second offense, and operating with a BAC of .08 or more, second offense, contrary to Wis. Stat. § 346.63(1)(a) and (b). Fischer pled not guilty, and the case was set for trial.

---

[10] *State v. Walstad,* 119 Wis. 2d 483, 519, 351 N.W.2d 469 (1984) ("In a state such as Wisconsin, where substantially unlimited cross-examination is permitted, the underlying theory or principle on which admissibility is based can be attacked by cross-examination or by other types of impeachment. Whether a scientific witness whose testimony is relevant is believed is a question of credibility for the finder of fact, but it clearly is admissible.").

[11] " 'Alcohol concentration' means the number of grams of alcohol in 100 milliliters of a person's blood or the number of grams of alcohol in 210 liters of a person's breath." Wis. Stat. § 885.235(1)(a).

¶ 9. He retained an expert who prepared a report using the data from the two tests, estimates as to the precise timing of the breath test after the stop, and absorption rate formulas to generate absorption curves, with the purpose of estimating the BAC prior to the time the PBT was taken, at the moment Fischer was stopped. In his report, the expert said his calculations were based on a method similar to the one known as speculative retrograde extrapolation, which uses known data to estimate a person's BAC at an earlier point in time. In the first report, dated February 13, 2006, the expert included the results of both tests and reached the following conclusion:

> I conclude that Mr. Fischer was in the absorptive phase when he was stopped and that his BAC was increasing with a high degree of scientific certainty. In addition my analyses, based on the chosen assumptions, indicate that the data are most consistent with, but do not establish, the hypothesis that Fischer was below the 0.08% threshold when stopped.

¶ 10. In June 2006, the State filed a motion in limine to exclude the expert's report and testimony "to the extent the report and testimony rely on the PBT result," on the grounds that "(1) the PBT result is inadmissible at trial pursuant to statute and (2) there is no showing that the PBT result is reliable for any purpose other than probable cause." After the State filed its motion in limine, Fischer submitted a second report, dated July 7, 2006, which his expert prepared on the basis that the PBT result could not be included in the data used for the analysis. The expert concluded, "[T]he single determination of blood alcohol made at 2:48 [a.m.] over an hour after [Fischer's] arrest is

insufficient to establish that his blood alcohol content was above the 0.08% threshold when he was stopped at 1:40 [a.m.]."

¶ 11. In a third submission by the expert, which was attached to Fischer's response to the State's motion in limine and submitted as Fischer's offer of proof[12] after the court granted the motion, the expert, Dr. John Steele, contrasted the analysis possible using both the PBT and blood test results with the analysis possible without the use of the PBT result, and concluded:

> If one rejects the breath test data and relies only on the blood test, then the plausible range of BAC when Mr. Fischer was stopped ranges from near 0.0% to 0.164%[,] a range which is both higher and lower than the critical 0.080% legal threshold. . . .

> If one includes the breath test result, . . . then at the time he was stopped Mr. Fischer most likely had a BAC of approximately 0.040% to 0.067%.

¶ 12. The report that was the subject of the motion in limine included Fischer's PBT result in the text of the report. Though the report attached to Fischer's offer of proof stated that the PBT result "played *no* role in computing the curves," the report acknowledged that the PBT result played a significant role in the overall analysis by "allow[ing] the range of BAC [at the time of the stop] to be narrowed down."

---

[12] Wisconsin Stat. § 901.03(1)(b) provides that "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." *See State v. Dodson*, 219 Wis. 2d 65, 73, 580 N.W.2d 181 (1998) ("Two purposes are served by an offer of proof: first, provide the circuit court a more adequate basis for an evidentiary ruling and second, establish a meaningful record for appellate review.").

¶ 13. Following a motion hearing on the matter, the circuit court granted the State's motion in limine. In so doing, the court observed that it was not aware of the legislative history of § 343.303, but that the legislature's intention was clear that "it was never contemplated that [a PBT] would be an evidentiary test." The circuit court said its ruling was made "in light of the legislature's clear pronouncement about the admissibility here." We note that had Fischer disclosed to Dr. Steele when and what alcoholic beverages he had been drinking, absorption curve opinion evidence from the expert based on that evidence would have been admissible.[13]

¶ 14. The matter was tried to a jury. The defense theory, as summarized in counsel's closing argument, was that the arresting officer was overeager to make an arrest and was therefore "not fair," and that Fischer was "going up on the absorption curve" when he was stopped and his BAC had not reached the .08 percent threshold. The jury convicted Fischer on both charges. Fischer appealed the circuit court's ruling excluding the expert's evidence and the court of appeals affirmed the circuit court's ruling. The court of appeals noted that, in order to apply Wis. Stat. § 907.03 as Fischer contends it must

---

[13] See, for example, *State v. Vick,* 104 Wis. 2d 678, 684–85, 312 N.W.2d 489 (1981) (basing an absorption curve defense on breathalyzer test result and testimony from defendant as to the amount of alcohol he had consumed), and Wis JI—Criminal 234 (2003), which states in part,

> Evidence has . . . been received as to how the body absorbs and eliminates alcohol. You may consider the evidence regarding the analysis of the (breath) (blood) (urine) sample and the evidence of how the body absorbs and eliminates alcohol along with all the other evidence in the case . . . .

be and permit an expert to base an opinion on and set before the jury inadmissible PBT results, the court "would have to conclude that any rule excluding evidence takes a back seat to a defendant's desire to admit such evidence, just because the State could rebut the evidence if it wished. That cannot be the law." *State v. Fischer*, 2008 WI App 152, ¶ 20, 314 Wis. 2d 324, 761 N.W.2d 7. In evaluating Fischer's constitutional claim, the court of appeals applied the *St. George* test and determined that Fischer had failed to satisfy the requirements of both parts of the test. Applying the first part of the *St. George* test, the court of appeals said Fischer failed to show that the proffered evidence satisfied the standards of Wis. Stat. § 907.02 (specifically, the court of appeals held that it would not assist the trier of fact) and that it had probative value. *Id.*, ¶ 24. Applying the second part of the *St. George* test, the court of appeals found Fischer had failed to show that his interest in presenting the evidence outweighed the State's compelling interest in excluding the evidence. *Id.*, ¶ 17. The rationale for the court of appeals' analysis in both steps centered on its view that PBT results were insufficiently reliable to serve as the basis for an expert opinion.

## II. STANDARD OF REVIEW

¶ 15. This case involves the interpretation of Wis. Stat. §§ 343.303, 907.02, and 907.03. Statutory interpretation presents a question of law that this court reviews de novo. *Rechsteiner v. Hazelden*, 2008 WI 97, ¶ 26, 313 Wis. 2d 542, 753 N.W.2d 496. It also involves review of a court's ruling on the admissibility of expert opinion.

> The admissibility of expert opinion testimony lies in the discretion of the circuit court. A circuit court

erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon facts in the record. . . . The question then is whether the circuit court applied the correct legal principles to the facts of record. This court decides any questions of law which may arise during its review of an exercise of discretion independently of the circuit court and court of appeals.

*St. George,* 252 Wis. 2d 499, ¶ 37 (footnotes omitted).

## III. ANALYSIS

■

¶ 16. We agree with the court of appeals that the statutes at issue here are best read to exclude expert testimony based on PBT results. We also agree that the State's compelling interest in excluding PBT results outweighs Fischer's right to present this evidence. As we explain herein, however, our analysis does not turn on the premise that PBT results are insufficiently reliable to serve as the basis of admissible expert testimony. It turns instead on the second part of the *St. George* test and on the State's compelling interest in investigating and successfully prosecuting those who violate drunk driving laws.

¶ 17. A preliminary matter to clarify is whether there is any meaningful difference between Fischer's presenting the expert's report that included the actual PBT result and presenting the expert's opinion testimony based on analysis of data including the PBT result, presumably without explicitly disclosing, at least initially, the PBT result to the jury. The motion in limine asked the circuit court to exclude both the written report and the opinion testimony. In his briefing to this court, Fischer focused on the admission of the expert opinion testimony and asserted that he "never intended to submit Dr. Steele's report to the

jury," and that "[t]he admission of Dr. Steele's *opinions* would not have presented PBT results for the jury's consideration." In other words, we understand Fischer to be arguing, if the expert testified only to his opinion, there would arguably be no technical violation of Wis. Stat. § 343.303.

¶ 18. In practical terms, however, in this case there is no meaningful difference. The PBT results, whether initially fully disclosed to the jury or not, would inevitably be disclosed to the jury the moment that the expert testified as to the methodology and data that underlie the opinion.[14] Fischer's brief explains that "[t]he jury would have heard in general Dr. Steele's methodology and the conclusions he reached." The methodology, of course, involved using the PBT result and the blood test result to indicate whether any absorption curves were consistent with both data points. Given that the expert represented in the report dated July 7, 2009, "[W]e can know virtually nothing about the BAC when [Fischer] was stopped" if the blood test is the only available evidence, it stands to reason that even a limited explanation of the methodology Fischer wanted to have put before the jury would have to include the first data point: the PBT result. Under these circumstances, admitting an expert opinion that relies on PBT results means admitting the PBT results in one form or another, and that cannot be done without violating Wis. Stat. § 343.303. We also again note that

---

[14] Permitting references to a prior PBT without giving the actual measurement is also unworkable. A defendant might well even benefit additionally from such coy use of the results. If jurors infer (or are told) that a test was administered but receive no results, they might infer a *lower* PBT than actually existed on the assumption that the State would not fail to disclose any result favorable to the prosecution.

the offer of proof included Fischer's PBT result and acknowledged the role it played in the expert's analysis.

¶ 19. Fischer argues that even if Wis. Stat. § 343.303 bars the use of PBT results, Wis. Stat. §§ 907.02 and 907.03, read together, create an exception to the prohibition in Wis. Stat. § 343.303 and explicitly permit use as the basis of an expert's opinion.[15] Those statutes permit an expert to testify to an opinion based on facts that are otherwise inadmissible if they are "of a type reasonably relied upon by experts." Wis. Stat. § 907.03.

¶ 20. The thorny question of what to do with inadmissible evidence that experts rely upon as a basis for an opinion is one that has proved difficult to answer with a fair and workable rule.

¶ 21. Law professor Daniel Blinka concisely summarizes the practical difficulty of explaining the bases for expert opinions when they include inadmissible evidence, and the unsatisfactory options for resolving the question:

> Problems arise, however, when experts are called upon to explain how they reached a conclusion. What

---

[15] Wisconsin Stat. §§ 907.02 and 907.03 provide:

907.02 Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

907.03 Bases of opinion testimony by experts. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

should be done with the experts' inadmissible bases? Does the experts' reliance validate the otherwise inadmissible information, thereby transforming it into admissible evidence? Conversely, should the court bar any mention of the tainted bases while permitting only the expert's testimony about the opinion? Or should the judge instruct the jury to consider the inadmissible bases for whatever bearing they have on the cogency of the expert's opinion testimony, but not for any other purpose? If the judge elects the latter course, what exactly does such an instruction mean? And if such limiting instructions are meaningless, is Rule 703 [a federal evidence rule parallel to Wis. Stat. § 907.03] a device that allows a party to simply parade inadmissible evidence before the jury in direct contravention of the exclusionary rules?[16]

¶ 22. Recent changes in federal evidence rules attempted to resolve the matter in federal courts by allowing disclosure of otherwise inadmissible facts or data to the jury after a judge has balanced the evidence's probative value against any prejudicial effect. Fed. R. Evid. 703 advisory committee's note, 2000 amendment. Blinka observes that this approach "is problematic on both policy and practice grounds" and illustrates what he calls the sometimes "nonsensical" results:

> In theory, the "otherwise" inadmissible basis is put before the jury for the limited purpose of explaining the expert's opinion and reasoning. But this creates some horrendous difficulties. In the hearsay context, although the expert may have relied upon the hearsay

---

[16] Daniel D. Blinka, *"Practical Inconvenience" or Conceptual Confusion: The Common-Law Genesis of Federal Rule of Evidence 703,* 20 Am. J. Trial Advoc. 467, 469 (1997).

statement for the truth of the matter asserted, the jury is instructed that it cannot use the statement for the very same purpose.[17]

¶ 23. We therefore approach this case with an understanding of the larger context and an awareness that courts have tried various approaches to expert opinion evidence, in an effort to create fair and workable solutions that appropriately filter the evidence presented to juries.

¶ 24. Our analysis is premised on long-established principles of statutory construction. "It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning. . . . Therefore, the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect."[18] When statutes conflict, we must attempt to reconcile them if possible.[19] When confronted with an apparent conflict between statutes, we construe sections on the same subject matter to harmonize the provisions and to give each full force and effect.[20] We will not construe statutes so as to work unreasonable results.[21]

---

[17] 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 702.604, at 621–22 (3d ed. 2008).

[18] *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110.

[19] *Bingenheimer v. Wis. Dep't of Health & Soc. Servs.,* 129 Wis. 2d 100, 107–08, 383 N.W.2d 898 (1986).

[20] *Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815 (1979).

[21] *Cross v. Hebl,* 46 Wis. 2d 356, 361, 174 N.W.2d 737 (1970).

¶ 25. Fortunately, in this case, the legislature's policy decision regarding the absolute inadmissibility of the PBT results under these circumstances simply could not be clearer. Reading the statutes together to create an exception to Wis. Stat. § 907.03 by excluding expert evidence to the extent that it is based on prohibited PBT results comports with our obligation to give effect to the legislature's intent. The alternative would likely nullify Wis. Stat. § 343.303 whenever a party attached the opinion or report of an expert to the PBT result it wished to get before the jury.

¶ 26. We approach this question carefully, cognizant of the effect this decision has on the law enforcement officers, prosecutors, and defense counsel who investigate and try these cases daily. The practical implications of a contrary reading would be significant. Among them would be the fact that, assuming that the rule would apply equally to the State, PBT results could routinely be used against defendants in spite of a statute to the contrary.[22] Further, reversing the legislature's assurance to drivers that PBT results will not be used in a prosecution for OWI could well mean that fewer suspected drunk drivers would be willing to submit to a PBT in the first place, with the result that police could find themselves more frequently in situations where they had reasonable suspicion sufficient to

---

[22] If the presentation of otherwise inadmissible PBT result evidence via an expert were permitted, there would be no reason to limit its use to the defense. Unlike other evidence that is unavailable to the prosecution (the involuntary testimony of the defendant, for example), PBT results are evidence that is originally in the State's possession that must be turned over to the defense. Rules of fair play certainly do not go so far as to require the State to gather and turn over evidence that is usable only by the defense.

justify an investigative stop, but perhaps insufficient evidence to establish probable cause for an arrest. Under circumstances like this, an officer could be faced with the constitutional necessity of releasing a driver he or she reasonably believed to be intoxicated.

¶ 27. Fischer contends that if the statutes are construed to exclude evidence based on the PBT results, as we do herein, they violate his constitutional right to present a defense.[23] Where a defendant challenges the exclusion of expert testimony evidence on the grounds that it violates his or her right to present a defense, the court evaluates the claim using the test set forth in *St. George* pursuant to the United States Supreme Court's decision in *Scheffer:*

> For the defendant to establish a constitutional right to the admissibility of the proffered expert witness testimony in the present case, the defendant must satisfy a two-part inquiry .... This two-part inquiry enables a circuit court to determine the accused's interest in admitting the evidence and to determine whether the evidence is clearly central to the defense

---

[23] *See Crane,* 476 U.S. at 690 ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citations and internal quotation marks omitted); *Strickland v. Washington,* 466 U.S. 668, 684–85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment[.]"). In *State v. Pullizano,* 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990), this court identified the confrontation and compulsory process clauses of Article I, Section 7 of the Wisconsin Constitution as a parallel source of such a right.

and the exclusion of the evidence is arbitrary and disproportionate to the purpose of the rule of exclusion, so that exclusion "undermine[s] fundamental elements of the defendant's defense."

*St. George,* 252 Wis. 2d 499, ¶ 53 (quoting *Scheffer,* 523 U.S. at 315).

¶ 28. The court then listed the factors for each step of the inquiry:

In the first part of the inquiry, the defendant must satisfy each of the following four factors through an offer of proof. The defendant must show:

1) The testimony of the expert witness met the standards of Wis. Stat. § 907.02 governing the admission of expert testimony.

2) The expert witness's testimony was clearly relevant to a material issue in this case.

3) The expert witness's testimony was necessary to the defendant's case.

4) The probative value of the testimony of the defendant's expert witness outweighed its prejudicial effect.

After the defendant successfully satisfies these four factors to establish a constitutional right to present the expert testimony, a court undertakes the second part of the inquiry by determining whether the defendant's right to present the proffered evidence is nonetheless outweighed by the State's compelling interest to exclude the evidence.

*St. George,* 252 Wis. 2d 499, ¶¶ 54–55 (footnotes omitted).

¶ 29. We assume without deciding that the defendant in the present case has satisfied the four factors of

the first part of the inquiry, since we view the second part of the inquiry as determinative of the outcome in this case.[24] Assuming Fischer has established a right to present the expert evidence in question, we nevertheless conclude for reasons given herein that his right to do so is outweighed by the State's compelling interest in excluding the evidence. Accordingly, exclusion of the evidence did not result in a violation of his constitutional right to present a defense.

¶ 30. In its brief to this court, the State argues that unique constitutional challenges are presented in OWI investigations and that significant law enforcement purposes are served by prohibiting the use of PBT results in OWI prosecutions:

> The critical fact is that the preliminary breath test is a preliminary screening tool used during the investigation of a person suspected of drunk driving before there is probable cause to make an arrest. A preliminary breath test may be requested when the police have more evidence than reasonable suspicion necessary to justify an investigative stop, but less than probable cause necessary to justify an arrest.

¶ 31. The legislative history of Wis. Stat. § 343.303 begins with Wisconsin Act 193, § 7, ch. 193, Laws of 1977, the original legislation creating what

---

[24] For examples of cases where this court has assumed without deciding that a preliminary step in the analysis has been satisfied, see *Washburn County v. Smith*, 2008 WI 23, ¶ 86, 308 Wis. 2d 65, 746 N.W.2d 243 ("Even assuming that the defendant has satisfied the first two prongs of the *Quelle* inquiry, he has not satisfied the third prong."), and *Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶ 19, 308 Wis. 2d 17, 746 N.W.2d 220 (for purposes of public policy analysis, assuming without deciding that plaintiffs established all four elements of a common-law negligence claim).

later became Wis. Stat. § 343.303, and it contains evidence that is consistent with this rationale. An analysis prepared by the Legislative Reference Bureau of the proposed bill (A.B. 1) states the following:

> Law enforcement officers are authorized to request persons suspected of driving under the influence of an intoxicant to submit to a preliminary breath test. The test results would not be admissible in any court action or proceeding where it is material to prove that the person was driving under the influence of an intoxicant, *but would give the officer a basis to decide if further chemical analysis would be necessary.*[25]

While that is a statement of fact, not a statement that that was the reason it was adopted, it is worth noting that we located no statement about the reliability or unreliability of the PBT in the legislative history.

¶ 32. In the evidentiary gap between reasonable suspicion and probable cause for arrest, a voluntarily taken PBT can furnish the necessary evidence to remove an impaired driver from the road.[26] Recognizing this, the State suggests, the legislature reasonably may have sought to eliminate any disincentive a driver might have to consent to take the PBT by assuring

---

[25] Drafting File for 1977 Wis. Act 193, *Analysis by the Legislative Reference Bureau* of 1977 A.B. 1, Legislative Reference Bureau, Madison, Wis. (emphasis added).

[26] This approach reflects the analysis we undertook of Wis. Stat. § 343.303 in *Renz* to determine the quantum of proof necessary for an officer to request that a driver take a PBT: "[W]e conclude that the context, history and purpose of the statute all suggest that 'probable cause to believe' refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop, . . . but less than the level of proof required to establish probable cause for arrest." 231 Wis. 2d at 316.

drivers that the results would not be used at trial. The State argues that promoting the gathering of evidence necessary to arrest those who are actually intoxicated obviously furthers the State's compelling interest in arresting and prosecuting drunk drivers, and we agree. It is beyond dispute that the State has a compelling interest in combating the threat to public safety created by drunk driving, as our cases and other courts have repeatedly recognized.[27] On this basis, we therefore conclude that Fischer's right to present evidence, assuming for the purposes of this argument that he has established that right by satisfying the factors of the first part of the *St. George* test, is nonetheless outweighed by the State's compelling interest in excluding the expert evidence based on PBT results.

¶ 33. Finally, we turn to Fischer's invitation to revisit the law regarding the admissibility of expert testimony and to adopt a *Daubert*-like approach with the judge as the gatekeeper. As we noted initially, our analysis does not turn on an evaluation of the reliability of an expert opinion based on PBT results. This therefore is not an appropriate case on which to base such an abrupt departure from established case law, especially on the strength of undeveloped arguments. As stated earlier, our analysis diverges from that of the circuit court and the court of appeals.

---

[27] "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion." *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 451 (1990). "Obviously, enforcing drunk driving laws is a significant state interest. No supporting authority is necessary to identify the significant toll that drunken drivers have exacted on the American public in loss of life, limb, and property." *State v. Bohling*, 173 Wis. 2d 529, 545, 494 N.W.2d 399 (1993).

¶ 34. We have taken a different approach than the one taken by both the circuit court and the court of appeals in their decisions to exclude the evidence. The question of whether PBT results are adequately reliable figured in the analysis of each of those courts in several respects, and the question of reliability was also raised by the State as a reason to exclude expert evidence based on PBT results.[28] The accuracy of this type of test may be subject to dispute, but Wisconsin courts have nevertheless upheld its admission for purposes other than those prohibited by Wis. Stat. § 343.303.[29] There is no basis for speculating that the reason the legislature prohibited the evidentiary use of a test that is used hundreds of times every day in Wisconsin is that it is "of dubious reliability even under the best testing conditions," as the State argued in its brief. In fact, a review of the legislative history of Wis. Stat. § 343.303[30] gives

---

[28] For example, the State in its brief to this court argues, "Fischer's expert wanted to use breath test results [that] would have been of dubious reliability even under the best testing conditions that were obtained from a breath testing device that may have been unable to produce results [that] were reliable at all."

[29] See, e.g., supra note 9 (citing Doerr, 229 Wis. 2d at 622, and Beaver, 181 Wis. 2d at 970).

[30] In Renz, 231 Wis. 2d at 312, we set forth the statute's legislative history:

The Wisconsin legislature first authorized a preliminary breath test in 1977 as part of Assembly Bill 1 of the November 1977 Special Session. 1977 A.B. 1; § 7, ch. 193, Laws of 1977. That original PBT statute provided "[i]f a law enforcement officer has probable cause to believe that a person has violated s. 346.63(1) . . ., the officer may request the person, prior to arrest and issuance of a citation, to take a preliminary breath test . . . ." Wis. Stat. § 343.305(2)(a)(1977–78)(repealed 1981).

. . . . .

no indication whatsoever that the prohibition on the use of PBT results is rooted in concerns about reliability of the test. If the PBT's reliability were of such concern, it would be a small thing for any competent defense attorney to attack the reliability of PBT results and thereby limit the value to the prosecution of such evidence. Saying that PBT results are not admissible is not the same thing as saying they are not reliable. Wisconsin's tradition of leaving the weight and credibility of the evidence to the trier of fact, which continues to be the law, cannot be squared with an analysis that excludes evidence on the basis of its lack of reliability.

## IV. CONCLUSION

¶ 35. Accordingly, we affirm. Though we benefit from the analyses of the court of appeals and the circuit court, we reach the result via a different analysis than that of those courts. The circuit court's grant of the motion in limine excluding the report and expert opinion was proper under Wisconsin statutes and it did not violate Fischer's constitutional right to present a defense. The rule we adopt here is not a blanket rule against absorption curve opinion evidence but rather a rule prohibiting use of PBT results in the manner attempted here.

██ ██

¶ 36. Our analysis does not turn on an evaluation of the reliability of an expert opinion based on PBT results, which after all are routinely relied on to estab-

---

In 1981, as part of the budget bill, the legislature enacted amendments to the OWI laws that, among other changes, removed the PBT from Wis. Stat. § 343.305 and created Wis. Stat. § 343.303. §§ 1568b and d, ch. 20, Laws of 1981.

(Brackets and first two ellipses in original.)

lish probable cause for arrest and have been held to be admissible for purposes other than those prohibited by statute. Because we conclude that the State's countervailing compelling interest and not the reliability of the expert testimony is dispositive of the analysis, there is no reason for us to revisit Wisconsin's well-established role for the circuit court where expert testimony is proffered. The law in Wisconsin continues to be that questions of the weight and reliability of relevant evidence are matters for the trier of fact. As we stated in *State v. Walstad,* "This is the relevancy test of our rules and we adhere to it." 119 Wis. 2d at 519. We, therefore, decline to adopt a *Daubert*-like approach to expert testimony and make the judge the gatekeeper.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 37. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I join the majority opinion's conclusion that Wis. Stat. § 343.303 "expressly bars" preliminary breath test (PBT) results in trials in which the charge is operating under the influence of an intoxicant in violation of Wis. Stat. § 346.63(1)(a) (OWI) or operating with a prohibited alcohol concentration in violation of § 346.63(1)(b) (PAC). *See* majority op., ¶ 4. As the majority opinion aptly states, "[T]he legislature's policy decision regarding the absolute inadmissibility of the PBT results under these circumstances simply could not be clearer." Majority op., ¶ 25. However, I write separately and concur because unlike the majority opinion, which concludes that the reliability of the PBT results is not dispositive, *see* majority op., ¶ 7, I conclude that as a matter of law PBT results are neither reliable nor admissible for the purpose of confirming or dispelling a defendant's specific alcohol concentration

in an OWI or PAC trial. In such a trial, an expert cannot reasonably rely on PBT results for that purpose, and thus, PBT results are not admissible to prove or disprove a specific level of alcohol concentration. *See* Wis. Stat. § 343.303 ("The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under s. 343.305(3)."). Finding an expert who wishes to rely on the PBT results to form an opinion does not transform the inadmissible and unreliable evidence into admissible evidence in an OWI or PAC trial, and such testimony would only confuse rather than assist the jury and would completely undermine the presumption afforded to proper chemical testing.

¶ 38. While there are other scenarios in which PBT results may be admissible, the circumstances of those cases do not involve PBT results being utilized to prove specific alcohol concentration as an element of the crime. *See State v. Doerr*, 229 Wis. 2d 616, 622–25, 599 N.W.2d 897 (Ct. App. 1999) (agreeing with the circuit court that PBT results were admissible at trial to assist the jury in evaluating the defendant's charges of battery to a law enforcement officer in violation of Wis. Stat. § 940.20(2) and resisting an officer in violation of Wis. Stat. § 946.41); *State v. Beaver*, 181 Wis. 2d 959, 969–71, 512 N.W.2d 254 (Ct. App. 1994) (concluding that PBT results may be admissible at trial as evidence of the defendant's comprehension of his *Miranda* rights or his ability to intelligently waive them). In contrast, in OWI and PAC cases, proving a specific alcohol concentration is often a hotly contested issue; a specific alcohol concentration is an element of

the crime (PAC)[1] and serves as statutorily relevant or prima facie evidence of an element of the crime (OWI).[2] In these cases, PBT results are not deemed reliable for purposes of confirming or dispelling a defendant's specific alcohol concentration and thus are not admissible at trial to prove or disprove the defendant's alcohol concentration, even though PBT results are admissible at the probable cause hearing. Wis. Stat. § 343.303; *State v. Faust,* 2004 WI 99, ¶ 26, 274 Wis. 2d 183, 682 N.W.2d 371. PBT results are utilized preliminarily for the purpose of determining whether a suspected drunk driver should be arrested and required to submit to further chemical testing. *See County of Jefferson v. Renz,* 231 Wis. 2d 293, 313, 603 N.W.2d 541 (1999) ("[T]he language that the legislature chose to describe

---

[1] In order to find a defendant guilty of operating with a prohibited alcohol concentration in violation of Wis. Stat. § 346.63(1)(b), the State must prove beyond a reasonable doubt that the defendant (1) operated a motor vehicle and (2) had a prohibited alcohol concentration at the time he operated the motor vehicle. Wis JI—Criminal 2660. "Prohibited alcohol concentration" is defined as "an alcohol concentration of 0.08 or more" if the defendant "has 2 or fewer prior convictions, suspensions, or revocations, as counted under s. 343.307(1)." Wis. Stat. § 340.01(46m)(a).

[2] In order to find a defendant guilty of operating while under the influence of an intoxicant in violation of Wis. Stat. § 346.63(1)(a), the State must prove beyond a reasonable doubt that the defendant (1) operated a motor vehicle and (2) was under the influence of an intoxicant at the time he operated the motor vehicle. Wis JI—Criminal 2663. "[A]n alcohol concentration of more than 0.04 but less than 0.08 is relevant evidence on the issue of intoxication," Wis. Stat. § 885.235(1g)(b), and "an alcohol concentration of 0.08 or more is prima facie evidence" that the defendant was under the influence of an intoxicant, Wis. Stat. § 885.235(1g)(c).

the test confirms that it intended the PBT to function as a screening tool to be used prior to arrest. . . . [W]hen it described the test as 'preliminary,' the legislature clearly indicated that it intended the test to be a preparation for something else. It seems obvious that something else—the main matter—is the arrest itself."). Unlike the PBT, such chemical testing is subject to certain safeguards to ensure reliability.

¶ 39. Essentially, Fischer's argument is that the statutory prohibition of PBT evidence is unconstitutional. Since the plain language of the statute precludes admissibility in the case at issue, Fischer would have the burden to prove the statute unconstitutional beyond a reasonable doubt. Simply stated, Fischer has not met that burden.

¶ 40. What is good for the goose is good for the gander. Just as the defense should not be allowed to admit PBT results in an underlying OWI or PAC trial, the State should not be able to rely on those test results either. Merely because an expert may opine that he or she relied upon PBT results in order to form an opinion does not render the underlying test results admissible. As we have seen in other scenarios, an expert's opinion does not transform inadmissible evidence into admissible evidence. For example, if an expert were to review polygraph test results or voice stress analysis test results to form a basis for an opinion, would the court allow those underlying test results to come in at trial when they are otherwise precluded? *See* Wis. Stat. § 905.065; *State v. Davis,* 2008 WI 71, ¶ 20, 310 Wis. 2d 583, 751 N.W.2d 332; *State v. Shomberg,* 2006 WI 9, ¶ 39, 288 Wis. 2d 1, 709 N.W.2d 370 (citing *State v. Dean,* 103 Wis. 2d 228, 278–79, 307 N.W.2d 628 (1981)). In other words, otherwise inadmissible evidence is not automatically admissible simply because a party can

find an expert who says that he or she relied upon that evidence in forming an opinion. In addition, to allow an expert to so opine without introducing the underlying data would tie the opposing party's hands with respect to cross-examination. The judge, as gatekeeper, has the capacity to determine whether certain evidence is admissible and whether certain expert testimony assists the jury in its determination, and PBT results have not been admissible in OWI or PAC trials. Here, admitting PBT results can serve only to confuse the jury and undermine the presumption of accuracy afforded to chemical tests like the Intoxilyzer. *See State v. Busch,* 217 Wis. 2d 429, 443, 576 N.W.2d 904 (1998) (explaining that approved quantitative breath alcohol test instruments, like the Intoxilyzer, are recognized methods of testing authorized by statute and are thus entitled to a prima facie presumption of accuracy); Wis. Admin. Code § TRANS 311.04 (May 1997); Wis JI—Criminal 230, 232 (When an approved testing device is involved, the jury is instructed that "[t]he law recognizes that the testing device used in this case uses a scientifically sound method of measuring the alcohol concentration of an individual. The State is not required to prove the underlying scientific reliability of the method used by the testing device. However, the State is required to establish that the testing device was in proper working order and that it was correctly operated by a qualified person.").

¶ 41. To admit PBT results in an OWI or PAC trial would unravel the presumption that currently exists with respect to the accuracy of the PBT and create a whole new burden of proof for the State. "The PBT device has not been approved by the [Department of Transportation (DOT)] and does not receive a prima facie presumption of accuracy to establish a defendant's blood alcohol level." *Doerr,* 229 Wis. 2d at 624–25 (ex-

plaining that because of the DOT's evaluation and approval, the legislature has determined that some breath test instruments are entitled to a prima facie presumption of accuracy; the PBT, however, is not included in the DOT's list of approved instruments and consequently has a limited evidentiary use in motor vehicle proceedings). Admitting PBT results at trial would erode the presumption and lead the jury to confusion rather than clarification when it comes to chemical test results. The legislature recognized that danger when it determined that in this type of trial, PBT results are not admissible to prove a specific level of alcohol concentration.

¶ 42. As a result, I conclude that the legislature has spoken, and PBT results are not admissible in an OWI or PAC trial for the purpose of confirming or dispelling a specific alcohol concentration. Even if an expert were to rely upon PBT results to form the basis of an opinion, the test results are still unreliable and inadmissible for the purpose offered in the case at issue. I agree with the majority, however, that this prohibition does not preclude the defense from offering an absorption curve defense. *See* majority op., ¶ 6. Still, just as I would not allow the State to introduce this PBT evidence at trial, the defense is precluded from offering an absorption curve defense based upon PBT results. Accordingly, I would conclude as a matter of law that an expert cannot reasonably rely upon PBT results to form an opinion in an OWI or PAC trial.

¶ 43. For the foregoing reasons, I respectfully concur.

¶ 44. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.