COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP272-CR**

Cir. Ct. No. **2020CF84**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL ISMAEL ELROY MARES,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: ROBERT P. DEWANE, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Daniel Ismael Elroy Mares appeals a judgment of conviction for first-degree intentional homicide and possession of a firearm by a felon.  He also appeals an order denying his postconviction motion.  Mares argues the circuit court erred by denying his motion to suppress custodial statements he made following the shooting, asserting his waiver of rights was defective, and that his statements were involuntary under the Fifth and Fourteenth Amendments. Mares also asserts the court erred by refusing to allow him to present evidence of a third-party perpetrator under *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).  Finally, Mares argues he was entitled to an evidentiary hearing on his postconviction motion, in which he alleged that his trial attorney was constitutionally ineffective for failing to request a self-defense or defense-of-others instruction at trial.

¶2     We reject Mares's arguments.  First, we conclude that he validly waived his rights at the inception of the custodial interview, and his statements were made voluntarily.  Second, we conclude Mares did not meet his burden to demonstrate that he was entitled to present *Denny* evidence.  Finally, Mares was not entitled to an evidentiary hearing on his postconviction motion because the Record conclusively demonstrates he is not entitled to relief.  Accordingly, we affirm.

## BACKGROUND

¶3     Angelina Neuaone and Abigail Rohde were going to fight their classmate Adyson Mihm, who was friends with Neuaone's ex-boyfriend, Felipe Perez.  After their plan to fight at a bus stop was thwarted, Neuaone and Rohde

2

went to the home of Jane, who was Neuaone's aunt.[1] Neuaone and Rohde told Mihm that if she really wanted to fight, Perez knew where to find them.

¶4 Later, Neuaone, Rohde, Jane, and Jane's boyfriend, Martin all went outside, where Mihm and her boyfriend, Mares, were exiting a vehicle. They were joined shortly afterward by Perez, who stood behind Mares and Mihm. Neuaone and Mihm started shouting at one another, and during the verbal confrontation Mares shined a laser through his hoodie pocket at the opposing group.

¶5 According to Jane's testimony, Mares then pulled a firearm from his sweatshirt pocket. Jane testified it was a black handgun with a laser light. Mares announced to the group, "nobody is going to beat my girlfriend up otherwise I will kill you all[.]" He then racked the slide and pointed it at the opposing group.

¶6 After Mihm directed an insult at Rohde, Rohde grabbed Mihm's head, and a physical fight began. At one point, Rohde and Neuaone were on top of Mihm, beating on her, and Mares grabbed Neuaone and threw her off Mihm. One of the girls punched Mares, and Mihm, Rohde and Neuaone all retreated, leaving Mares facing Jane and Martin. A neighbor saw a smaller male with a white T-shirt, believed to be Martin, unsuccessfully try to push back a larger male in a dark sweatshirt, believed to be Mares.

¶7 The neighbor and others saw Mares point the gun at Martin and shoot him in the chest at a distance of a few feet. At the time of the shooting, Martin was standing with his arms outstretched at his sides, palms facing Mares.

---

[1] We follow the State's lead in using pseudonyms for the homicide victim and his girlfriend.

3

Mares started walking back to the car, then turned around and shot Martin a second time. The gunshot wounds were fatal. Rohde heard Mares say immediately afterwards that he had shot Martin.

¶8 Mares was apprehended, interviewed, and charged with first-degree intentional homicide and felon in possession of a firearm. Mares moved to suppress statements he made during his interview, arguing he had not validly waived his *Miranda* rights[2] and his statements were made involuntarily. The circuit court concluded the circumstances of the interview did not indicate improper coercion by law enforcement. The court also made findings that undercut Mares's assertion that his *Miranda* waiver was made unknowingly and under duress.

¶9 During pretrial proceedings, Mares also moved under *Denny* to admit evidence that Perez was the shooter. Among other things, Mares pointed out that no fingerprints—including his—were located on the suspected firearm, and testing on the dark sweatshirt Mares was wearing revealed no gunpowder residue. The circuit court rejected the *Denny* motion, reasoning that no witness to the shooting had identified anyone other than Mares as the shooter and Mares had admitted during his police interview that he was the shooter. In the language of *Denny*, the court concluded there was an insufficient "direct connection" between Perez and the shooting. For the same reasons, the court also rejected the defense

---

[2] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).

effort to implicate Mihm in the shooting based on the fact that she was found afterwards with the gun in her backpack.[3]

¶10    During the trial, the circuit court and attorneys had a sidebar where the possibility of a self-defense claim was discussed. Summarizing that sidebar, defense counsel stated:

> I know that my client has taken the position … all along that he did not commit this crime, that he didn't fire the gun, he didn't shoot the deceased. And I know this [the witness questioning] was getting into a different area dealing with self-defense which there needed to be an earlier motion in limine on this so the Court could decide if this case would qualify for a self-defense argument.
>
> So I agree after further talking with my client we can't go down this road of self-defense argument because he's taken the position he didn't commit this crime, didn't fire the gun, he didn't kill anyone in this case.

The court acknowledged the defense position and allowed for the possibility that the parties may need to revisit the self-defense issue depending on the content of Mares's testimony, if he decided to testify.

¶11    Mares elected not to testify. Instead, the defense case challenged whether Mares had any motive for the shooting, also emphasizing the lack of forensic evidence that Mares was the shooter and the fact that Mihm was found with the firearm. The jury convicted Mares of both counts. He was ordered to serve a life sentence without parole.

---

[3] Mihm testified at trial that Mares had handed her the backpack after the shooting and she was unaware that the gun was inside of it.

¶12    Mares filed a postconviction motion alleging that his trial counsel was constitutionally ineffective for failing to present a self-defense or defense-of-others claim. The circuit court did not rule on the motion, and it was deemed statutorily denied by operation of WIS. STAT. RULE 809.30(2)(i) (2023-24).[4] At this court's direction, the clerk of the circuit court entered a written order denying the motion. Mares now appeals.

## DISCUSSION

¶13    Mares raises multiple claims on appeal. First, he argues his custodial statements should have been suppressed, both as a function of an invalid *Miranda* waiver and because the statements were involuntary. Second, he contends the circuit court erred by denying his *Denny* motion. Finally, he argues he was entitled to an evidentiary hearing on his postconviction motion alleging ineffective assistance of trial counsel. We address and reject these arguments in turn.

*I.    The circuit court properly denied Mares's suppression motion.*

¶14    Mares first argues that the circuit court erred by denying his motion to suppress the custodial statements he made after he was apprehended. Whether evidence should be suppressed is a question of constitutional fact. *State v. Floyd*, 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560. We review the circuit court's findings of historical fact under the clearly erroneous standard. *Id.* The

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version.

application of those facts to constitutional principles is a question of law that we review independently.[5] *Id.*

¶15 Mares's arguments in favor of suppression take two forms. First, he argues that the State failed to obtain a valid *Miranda* waiver, as the waiver was made under duress and was not made knowingly. Second, Mares asserts his confession was the product of coercive tactics by law enforcement that overcame Mares's will, rendering his statements involuntary. We reject both arguments.[6]

### A. *Mares validly waived his Miranda rights.*

¶16 It is undisputed that Mares was provided with the *Miranda* warnings and provided a signed waiver of rights. "In order to be valid, a *Miranda* waiver must be knowing, voluntary and intelligent." *State v. Ward*, 2009 WI 60, ¶30, 318

---

[5] Mares argues that under *State v. Rejholec*, 2021 WI App 45, ¶17, 398 Wis. 2d 729, 963 N.W.2d 121, the standard of review on even the factual issues is de novo, as the custodial interrogation was video recorded. Our conclusions are the same regardless of the applicable standard of review.

[6] As a third aspect of these arguments, Mares appears to argue there is a Fifth Amendment voluntariness analysis that is more rigorous than the voluntariness analysis employed as a result of selective incorporation through the Fourteenth Amendment. It is true that the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment are separate constitutional bases for the rule that only voluntary confessions may be admitted into evidence. *State v. Ward*, 2009 WI 60, ¶18, 318 Wis. 2d 301, 767 N.W.2d 236.

However, the cases on which Mares relies for the proposition that there are separate standards governing voluntariness under the Fifth and Fourteenth Amendments are quite dated. The primary case on which Mares relies, *Bram v. United States*, 168 U.S. 532 (1897), predated by decades the incorporation of the Fifth Amendment right against self-incrimination against the states in *Malloy v. Hogan*, 378 U.S. 1 (1964). *Malloy* itself seems to reject any notion of separate standards, dispensing summarily with the idea that that "[i]n the coerced confession cases" a "'watered-down, subjective version'" of the right might apply to the states. *Id.*, at 10-11 (citation omitted). For purposes of this opinion, it is sufficient to note that we are unpersuaded that the policy against coerced confessions ensconced in the Fifth Amendment is substantively different than the standard applicable to the states by virtue of the Fourteenth Amendment.

Wis. 2d 301, 767 N.W.2d 236.  Generally, the State establishes a prima facie case of a valid *Miranda* waiver by showing that the defendant has been advised of the rights and admonitions required by *Miranda*, and that the defendant indicated an understanding of those rights and was willing to make a statement.  *State v. Beaver*, 181 Wis. 2d 959, 967, 512 N.W.2d 254 (Ct. App. 1994).  Statements made under those circumstances should be admitted unless "countervailing evidence" shows that the *Miranda* waiver was invalid, or that either the *Miranda* waiver or the statements subsequently made were involuntary.  *See State v. Lee*, 175 Wis. 2d 348, 361, 499 N.W.2d 250 (Ct. App. 1993).

¶17     Mares first argues his waiver was invalid because it was made under duress given that he was on community supervision at the time.  Mares contends he would have felt compelled to talk to the police given that he was bound by Wis. Admin. Code § DOC 328.04(3)(p) (Nov. 2024)[7] to "[p]rovide true and correct information verbally and in writing as required by the department."  To highlight Mares's alleged rock-or-whirlpool choice, *see Garrity v. State of New Jersey*, 385 U.S. 493, 496 (1967), Mares observes that his statements during the police interview demonstrated his deep concern that his probation officer be told he was cooperating and being truthful.

¶18     We agree with the State that this argument is meritless.  Mares was undoubtedly concerned about getting revoked from supervision, but that is not the same as him feeling compelled to answer questions about a separate crime by virtue of his supervision status.  On this latter point, Mares cites no evidence that the applicable Wisconsin Administrative Code provisions in any way informed his

---

[7]  All references to Wis. Admin. Code § DOC are to the November 2024 register.

willingness to speak with the police. And, as the State points out, WIS. ADMIN. CODE § DOC 328.04(3)(p) applies to information "required by the department"— meaning the Department of Corrections, *see* WIS. ADMIN. CODE § DOC 328.03(15), not conversations with other law enforcement agencies or authorities investigating new offenses.[8]

¶19 Second, Mares argues that the ***Miranda*** waiver was not made knowingly, given what Mares argues, were evasive answers to some of Mares's questions about the interrogation. Specifically, Mares faults the interviewing detective for not being forthright about Mares's prospects of being released from custody if he terminated the interview. Mares contends the detective's refusal to tell Mares he was under arrest and would be jailed no matter what constituted police deception that rendered the waiver unknowing under ***State v. Rejholec***, 2021 WI App 45, 398 Wis. 2d 729, 963 N.W.2d 121.

¶20 We perceive no misrepresentations by police regarding the nature of Mares's ***Miranda*** rights that would render his waiver unknowing. The detective's failure to tell Mares he would be held in custody regardless of whether he spoke with police is not the type of deception the police used in ***Rejholec***, where the defendant was told that he would not be able to testify at trial unless he gave a statement to the police. *See id.*, ¶¶30-31. Ultimately, Mares cites no authority for the notion that a defendant must be told whether he or she would remain in custody to produce a valid waiver.

---

[8] Mares opaquely argues that the Department of Corrections "was involved as an implied threat." If Mares is referring to the possibility of revocation, he has cited no authority—and we are skeptical there is any—for the proposition that such a possibility renders a ***Miranda*** waiver coerced.

*B. Mares's statements were not the product of improper police coercion.*

¶21 Both the state and federal constitutions require a statement to be voluntary to be admitted into evidence. ***State v. Vice***, 2021 WI 63, ¶28, 397 Wis. 2d 682, 961 N.W.2d 1. Determining whether a statement was voluntary typically involves balancing the defendant's personal characteristics, such as age, intelligence, physical and emotional condition, and prior experience with law enforcement, against any pressures imposed by the police. ***Id.***, ¶30.

¶22 Coercive or otherwise improper police practices are a threshold consideration. The absence of such practices is determinative on the issue of voluntariness. ***Id.*** (citations omitted). "If our analysis of the facts does not reveal coercion or improper police pressures, there is no need for us to engage in the balancing test between the suspect's personal characteristics and those nonexistent pressures." ***Id.***, ¶31 (citation omitted).

¶23 Establishing coercion is a "high bar for a defendant to surmount." ***Id.***, ¶32. Physical violence, threats, sleep and food deprivation, and lengthy interrogation are all circumstances that may indicate coercion. ***Id.***, ¶34. However, coercive police conduct may take more subtle forms, too. ***Id.***, ¶32 (citation omitted). Due process protections are intended to safeguard against conduct or circumstances that destroy the defendant's volition and compel him or her to confess. ***Id.***, ¶32.

¶24 We agree with the State that the Record here is devoid of evidence of improperly coercive police conduct. Mares emphasizes that he was arrested at gunpoint, but that occurred well prior to Mares's interview. During the interview, there were no weapons displayed and no threats made. Mares was not promised

anything. He was not subjected to any of the inherently coercive tactics discussed above.

¶25 Instead, Mares suggests that he was subjected to "psychological and moral force" during his interrogation. Mares appears to refer solely to a single persuasive tactic used by the detective, when the detective disbelieved Mares's denials and told him that, based on his interviews with others, the train "has left the station, ok, and you can either get on board and tell the truth or it's going to drive right over you." But "merely telling somebody to tell the truth is not coercive." *Etherly v. Davis*, 619 F.3d 654, 663 (7th Cir. 2010), *amended on denial of reh'g and reh'g en banc* (Oct. 15, 2010).

## II. *Mares failed to establish that he was entitled to present **Denny** evidence.*

¶26 Mares falls short on two of the three criteria necessary to establish a viable third-party perpetrator defense.[9] Under ***Denny***, the proponent of the third-party evidence must demonstrate that there is a "legitimate tendency" that the third party could have committed the crime by establishing that the third party had the motive to commit the offense, the opportunity to do so, and a direct connection to the crime. *See **State v. Mull***, 2023 WI 26, ¶41, 406 Wis. 2d 491, 987 N.W.2d 707. We review a circuit court's decision to exclude evidence for an

---

[9] Given our holding, we have no need to address the third criterion.

11

erroneous exercise of discretion. *State v. Wilson*, 2015 WI 48, ¶47, 362 Wis. 2d 193, 864 N.W.2d 52.[10]

¶27     Mares admits that his motions in which he sought permission to implicate Perez did not offer anything suggesting a plausible motive for Perez to have wanted to kill Martin. Nonetheless, he suggests on appeal that Perez "was mad watching his close friend getting beat up by his ex-girlfriend, and the anger and stress of the situation caused him to want to shoot [Martin] when [Martin] joined the confrontation." Even assuming such a tenuous motive would suffice, Mares points to nothing in the Record suggesting Perez actually experienced these emotions during the altercation.

¶28     Instead, Mares relies on the concept of judicial estoppel. He asserts that he should be allowed to argue Perez was mad because the State was allowed to argue at trial that Mares was "mad [that] his girlfriend is getting beat up and had enough of it." We agree with the State that the notion that Perez shot a bystander that was not part of the scuffle with Mihm merely because Perez was mad is insufficient. Additionally, the prosecutor's motive remark was merely one of a "lot of possible reasons" the prosecutor offered for why Mares might have committed the shooting.

¶29     The circuit court also properly concluded that Perez lacked opportunity to commit the murder. "The defense theory of a third party's

---

[10] Mares suggests that the standard of review for this issue is one of constitutional fact. However, he does not present any argument that would implicate the constitutional dimensions of *Denny* evidence, for example by arguing that the third-party-perpetrator evidence was essential to his defense. Accordingly, we review the matter for an erroneous exercise of discretion. However, our conclusion would be the same even applying the standard for questions of constitutional fact.

involvement will guide the relevance analysis of opportunity evidence in a *Denny* case." *Wilson*, 362 Wis. 2d 193, ¶68. This analysis can involve practical considerations, such as whether there is evidence that the third party had the "contacts, influence, and finances" to commit the alleged crime. *Id.*, ¶85.

¶30 Here, to commit the shooting, Perez would have needed a firearm capable of firing the bullets that killed Martin. There is no evidence he possessed any firearm at the scene, or even had access to one. By all accounts, the only person who possessed a firearm at the scene was Mares, and the only firearm recovered was found in a backpack that Mihm testified Mares gave her. Mares presented insufficient evidence of opportunity to warrant the admission of *Denny* evidence.

### III. *Mares has failed to demonstrate he was entitled to an evidentiary hearing on his ineffective assistance of counsel claim.*

¶31 For a defendant to be entitled to an evidentiary hearing, a motion must on its face allege sufficient material facts that, if true, would entitle the defendant to relief. *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. We review that issue de novo. *Id.* "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently." *Id.*

¶32 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they

are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶33 To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also* ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. ***Savage***, 395 Wis. 2d 1, ¶25.

¶34 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶35 Here, we conclude that Mares was not entitled to an evidentiary hearing because the record conclusively shows he was not entitled to relief. The State argues that any self-defense instruction would have been met with the State's request for WIS JI—CRIMINAL 815 (2020), which renders the privilege unavailable to a person who provokes an attack and subsequently uses lethal force unless the person reasonably believed he or she has exhausted every other reasonable means to escape. The State's argument continues that even if the jury had been instructed on the law of self defense, there is no possibility that Mares could demonstrate a reasonable probability of a different verdict.

¶36 We agree that the evidence of Mares's guilt is overwhelming, even in light of relevant self-defense instructions. Mares and his group went to Jane's home looking for a fight. Before the fight started, Mares brandished a firearm and declared that he would kill everyone if they tried to beat up Mihm. There was a valid evidentiary basis for the State to request a provocation instruction.

¶37 Even setting aside a provocation instruction, there was no evidence upon which a jury could conclude Mares believed—reasonably or otherwise—that lethal force was necessary to prevent imminent death or great bodily harm to himself or others. *See* WIS JI—CRIMINAL 805 (2023); WIS JI—CRIMINAL 830 (2005). One of Mares's shifting narratives of the event was that Martin possessed a knife. This claim was wholly unsupported by any other evidence; no other person claimed they saw Martin with a knife, and no knife was recovered at the scene. An unarmed Martin posed little threat—Martin was smaller than Mares, and witness testimony was that at the time of the shooting, Martin was in a neutral position, arms outstretched at his side with his palms out. The circuit court properly denied Mares's postconviction motion without a hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.